In re the Marriage of Irene A. HEL-
LAND, petitioner, Respondent,

v.

Robert L. HELLAND, Appellant.

No. C2–84–395.

Court of Appeals of Minnesota.

Sept. 18, 1984.

M. Sue Wilson, Minneapolis, for respondent.

Robert L. Helland, Minneapolis, pro se.

Raymond M. Lazar, Lapp, Lazar, Laurie & Smith, Minneapolis, for appellant.

Considered and decided by HUSPENI, P.J., and RANDALL and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

This is an appeal by appellant husband from a judgment and decree of marriage dissolution. Both parties' motions for amended findings of fact and conclusions of law were denied by the trial court. We affirm.

## FACTS

Appellant husband and respondent wife married in 1966. They separated in April 1981, and the marriage was dissolved on December 2, 1983. They have two minor children, now in wife's custody.

At the time of the dissolution, husband was a full-time faculty member of the William Mitchell College of Law, a position which terminated July 31, 1984. He was also a part-time member of the law faculty at the University of Minnesota, and engaged in a private practice approximately ten hours per week. He had not arranged full-time employment to replace the Mitchell position, but there was a possibility of returning full-time to his old law firm.

Wife is a registered nurse, but was not employed during the marriage after 1968. She returned to a nursing practice part-time after the separation, but was unable to find full-time employment.

The trial court divided the parties' assets and liabilities nearly equally. Husband received his retirement benefits at Mitchell and his law firm Keogh plan proceeds. The court valued the Mitchell plan at $29,647, and the Keogh plan at $64,562. Husband testified that the Mitchell plan funds were available to him upon the termination of his employment, and the Keogh plan upon retirement. Husband was born in 1930.

Husband borrowed $45,000 from the trustee of the Keogh plan. This transaction occurred after a family court referee issued a restraining order preventing the parties from disposing of their assets. The trial court found that husband withdrew and disposed of that amount without wife's consent. The trial court considered the $45,000 "withdrawal" as an advance against husband's property settlement, discounted the outstanding pension fund loan balance by $45,000, and did not include it in husband's debt total.

The trial court further ordered husband to pay $1,340 per month for child support, 30% of his monthly net income.

## ISSUES

1. Whether the trial court erred in failing to consider the tax consequences to husband upon distribution of his retirement plans.

2. Whether the trial court erred in excluding a promissory note owed by husband to his Keogh plan trustee in valuing assets of the plan and in excluding that note as a liability of husband.

3. Whether the child support award was excessive.

4. Whether the trial court made other material errors in property valuation and distribution.

## ANALYSIS

██ 1. It is within the trial court's discretion to consider the tax consequences of a property award. *Johnson v. Johnson*, 277 N.W.2d 208, 213 (Minn.1979). However, the law precludes their consideration where to do so would force the court to

speculate. *O'Brien v. O'Brien*, 343 N.W.2d 850, 854 (Minn.1984). Alternatively, if the taxable event will occur within a short time after the dissolution, the court should consider the tax consequences. *Aaron v. Aaron*, 281 N.W.2d 150, 153 (Minn.1979).

■ The taxable event under each plan is the withdrawal of funds. The Keogh plan funds are not available to husband until his retirement some eleven years hence. To predict the government's tax structure that far in the future would be mere speculation. Predicting husband's financial condition at that point would also be folly, especially since the record does not show how husband's income will be earned in the future, or the extent of that income.

Husband would have a legitimate concern if he was required to withdraw the Mitchell funds upon his termination. However, everything in the record, primarily husband's testimony, indicates that the funds simply become available to him in their entirety at that date. He has the option to withdraw the money, but, as is generally true with retirement plans, he also has the option of leaving the funds in the plan to provide an annuity payment upon retirement.

Husband's situation here is similar to that of the appellants in *Johnson, O'Brien,* and *Aaron.* In those cases, the court was concerned with capital gains taxes. In both capital gains and retirement fund tax situations, the owner can fully enjoy the benefits of continued ownership without immediately paying taxes. Whether to sell securities, withdraw funds, or continue the status quo is largely within the discretion of the owner. It is in those cases where a taxable event regarding a marital asset is certain to occur shortly after a dissolution that a trial court is well-advised to consider the tax consequences in the judgment and decree. That situation is not present here. A court would be engaging in speculation if it attempted to factor in retirement fund tax consequences under the circumstances presented here.

2. Husband argues that he can account for the proceeds of the $45,000 loan from the Keogh plan, and that it all was properly spent on marital obligations or expenses. Therefore, he argues, he did not dissipate marital assets in violation of the restraining order. He claims he is entitled to have the loan included in his liabilities.

■ We do not find the trial court's determination on this issue to be an abuse of its broad discretion. There is no indication that husband attempted to reach an agreement with wife and her attorney regarding invasion of the marital estate to discharge pressing marital debt. Nor is there any indication that husband petitioned the court for relief from the restraining order provisions husband deemed burdensome. Either of these alternative actions would have been far preferable to that taken by husband. Finally, although he argues that his violation of the restraining order resulted in payment of marital debts, a thorough review of the record does not clearly indicate that the $45,000 was so utilized. The trial court made no finding of satisfaction of marital indebtedness from these monies. That failure by the court was not clearly erroneous. Ultimately, a marital asset was depleted by husband.

> A party to a marriage subject to severance in divorce proceedings cannot be permitted to subvert the orderly processes of the courts by concealing, dissipating, or misusing his assets in anticipation of divorce so as to reduce the property available for division * * *.

*Bollenbach v. Bollenbach*, 285 Minn. 418, 428, 175 N.W.2d 148, 155 (1970). We conclude the trial court did not abuse its discretion by reducing the value of the Keogh plan asset awarded husband, thus reflecting the use of the $45,000 as an advance on his share.

3. The trial court set child support at 30% of appellant's income, reduced to 25% when the first child reaches age eighteen. This is in accord with Minn.Stat. § 518.551, subd. 5, and § 518.17, subd. 5 (1982). Husband claims he is unable to meet this figure

because of his debt obligations arising from poor investments made during the marriage. His debt service payments total approximately 50% of his net monthly income.

While we are not insensitive to the adverse economic consequences inuring to husband as a result of the marriage dissolution, those consequences are visited upon wife and children also. Husband's earning capacity is far greater than wife's, a factor properly considered in setting child support. Minn.Stat. § 518.17, subd. 4 (1982). Husband grossed nearly $70,000 in 1982. If wife were able to obtain full-time employment, she is capable of earning only between $17,000 and $21,000.

 Adverse financial consequences of marital dissolutions should be minimized for minor children to the greatest extent possible. *Kreidler v. Kreidler*, 348 N.W.2d 780 (Minn.Ct.App.1984). There is sufficient evidence to support the trial court's finding that husband is able to pay 30% of his income as child support. We can discern no abuse of discretion in the trial court's failure to deviate downward from the recommended amounts for child support.

4. Appellant's final allegation of error is a compilation of several debts which he claims were improperly valued and distributed.

 Minn.Stat. § 518.58 (1982) requires only that the trial court make a just and equitable distribution of property, not an equal one. There is sufficient evidence in the record to support the trial court's values of the parties' debts. Precise mathematical computation is not required if the overall distribution is equitable. Any variations here are minor, and not grounds for reversal.

### DECISION

The trial court acted within its broad discretion in valuing husband's retirement plans, determining indebtedness, and establishing an award of child support.

Affirmed.