**In Re the Marriage of Curtis H. HATTSTROM, Petitioner, Appellant,**

v.

**Carolann E. HATTSTROM, Respondent.**

**No. C7–85–1360.**

Court of Appeals of Minnesota.

April 15, 1986.

Review Denied June 30, 1986.

Edward M. Cohen, St. Louis Park, for appellant.

Rollin J. Whitcomb, Minneapolis, for respondent.

Heard, considered and decided by HUSPENI, P.J., and FOLEY and NIERENGARTEN, JJ.

## OPINION

FOLEY, Judge.

Curtis H. Hattstrom appeals from a final decree claiming that the trial court erred in valuing nonvested portions of his pension and profit-sharing plans, in awarding respondent a cash property settlement award of $72,000, and in failing to reduce the marital estate by a $21,000 indebtedness he incurred for family obligations. Carolann E. Hattstrom filed a notice of review, asserting that the trial court erred by not awarding her permanent maintenance and by only awarding her partial attorney's fees. We affirm.

## FACTS

This is a dissolution of a 24-year marriage. At the date of trial, the husband was 45 years old and the wife was 44 years old. The parties had two children, both of whom are now adults.

Appellant is a dentist practicing for a five-dentist professional corporation. The trial court valued appellant's 200 shares of stock in the corporation at $124,000. Appellant also owns a 25% interest in a general partnership with three of the other dentists. Appellant's interest in the partnership's assets was valued at $49,434. As a dentist, appellant earned $96,175 in 1982, $87,020 in 1983, and $88,200 in 1984. In addition, appellant's annual benefits are worth approximately $10,000, not including pension and profit sharing. For the fiscal year December 1, 1984 through November 30, 1985, appellant's base salary was $99,100, exclusive of benefits.

Jerome McKoskey, an actuary, testified for respondent on the value of appellant's pension and profit-sharing plans as of November 30, 1984. McKoskey noted that the plans were 60% vested. He testified that the value of appellant's benefit plans was easily calculated because the benefits equal the contributed assets plus accrued interest. McKoskey valued the vested portion of the pension plan at $35,381.24 and the nonvested portion at $23,587.50. He valued the vested portion of the profit-sharing plan at $18,518.65 and the nonvested portion at $12,345.76. Appellant testified that he had borrowed $3,000 from his pension plan account and $1,500 from the profit-sharing account. The trial court reduced McKoskey's valuations by these amounts and valued appellant's pension plan at $50,968.74 and the profit-sharing plan at $29,364.41.

Respondent was primarily a traditional homemaker during the marriage. She is a high school graduate and worked as a bookkeeping machine operator and later as a secretary while her husband was in dental school. Respondent left remunerated employment in August 1963 upon the birth of the parties' first child. Appellant graduated from dental school in 1964, the same year the parties' second child was born. Shortly thereafter, respondent began experiencing health problems for which she still continues to take medication and restrict her diet.

Subsequently, respondent took a correspondence course in interior design and worked part time in that field from 1971 to 1982. Employment in this area produced no significant income. Respondent also worked part time as a retail sales person from September 1980 to January 1981. She left this job because of physical illness and has not been employed since outside the home. Presently she is taking a word

processing course but does not want to pursue full-time employment.

During the summer of 1983, respondent was hospitalized and diagnosed by psychiatrist Dr. W. Wyatt Moe as suffering from a major depressive episode. Respondent continues to see Dr. Moe. At trial Dr. Moe testified that respondent's depression has a genetic basis and that the condition currently prevents her from retraining or entering full-time employment. He stated, however, that respondent's prognosis for recovery from this particular episode was good. Dr. Moe opined that it was possible that in four years respondent would be occupationally competitive and self-sufficient, although recurrence of depressive episodes was a continuing risk.

The trial court found agreement between the parties that respondent is "unable to adequately support herself through appropriate employment and is in need of rehabilitative maintenance." Further, the court found that the property award "is inadequate to provide for her reasonable needs during the period of transition toward self-sufficiency," and that appellant has the financial ability to assist respondent in meeting her needs.

The trial court awarded respondent temporary maintenance for four years in declining amounts, reserving jurisdiction to continue maintenance beyond April 1989. Respondent was also awarded partial attorney's fees of $7,500.

Appellant also testified that he incurred a bank debt of $21,000 to meet child support and maintenance obligations during the parties' separation. The trial court apportioned this debt to appellant and hospital and doctor bills totaling $412 to respondent.

The trial court awarded appellant $281,045 of assets and directed him to pay respondent $72,300 to equalize their awards. Respondent received $136,444 in property along with the $72,300 cash award. Each party's net share, excluding the debts, totaled approximately $208,745.

## ISSUES

1. Did the trial court abuse its discretion when it assigned a value to the nonvested portions of appellant's pension and profit-sharing plans and divided these assets at dissolution?

2. Did the trial court abuse its discretion when it awarded respondent a cash property settlement of $72,300 to equalize the parties' shares but excluded testimony on future tax consequences of potential benefit plan withdrawals?

3. Did the trial court err in dividing the marital property when it allocated appellant's $21,000 bank loan to appellant?

4. Did the trial court err in denying respondent permanent maintenance?

5. Did the trial court abuse its discretion in awarding respondent only partial attorney's fees?

## ANALYSIS

1. Appellant contends that the trial court abused its discretion in valuing and dividing the nonvested portions of his pension and profit-sharing plan since the benefits have not matured and the valuation was speculative. He asserts that the trial court should have followed the direction of *Janssen v. Janssen*, 331 N.W.2d 752, 756 (Minn.1983), "ordering apportionment of the future benefits *only if and when such benefits are paid.*" (Emphasis in original.)

McKoskey testified that 40% of appellant's plans were nonvested and unmatured at the time of trial, however, these benefits vested at a rate of 10% per year and appellant would be entitled to full benefits by November 30, 1988 if he continued his employment with the corporation until then. Appellant has a substantial investment in the dentistry practice and receives substantial remuneration. He indicated no plans to sell out, and it is very likely his benefits will fully mature. Unlike *Janssen*, if appellant died within the next four years, his estate would receive the full value of his account.

The Minnesota Supreme Court recently outlined two methods for dividing vested

but unmatured benefits in *Taylor v. Taylor*, 329 N.W.2d 795 (Minn.1983), stating:

In deciding whether retirement benefits should be divided at the time of dissolution or upon future receipt by the employee spouse, the trial court should consider the advantages and disadvantages of each method in light of the facts of the particular case before it.

Division of retirement benefits at the time of divorce has the obvious advantage of avoiding the continuing jurisdiction of the court in order to insure that the appropriate payments are made to the non-employee spouse upon receipt of pension benefits by the employee spouse. This method is preferred where there are sufficient assets available at the time of divorce to divide the present value of the retirement benefits without causing an undue hardship to either spouse and where testimony on valuation is not unduly speculative.

A second method requires the determination of a fixed percentage for the non-employee spouse of any future payments the employee receives under the plan, payable when paid to the employee. This method, chosen by the trial judge in the instant case, has the advantage of making it unnecessary to determine the present value of the pension fund. The fixed percentage method should be used where present value determinations are unacceptably speculative or there are not enough assets to equitably require that benefits due in the future be split presently. *See Holbrook v. Holbrook*, 103 Wis.2d 327, 309 N.W.2d 343 (Wis.App. 1981).

*Id.* at 798–99. In reviewing the trial court's use of the second method, the supreme court found no abuse of discretion since there were insufficient assets available to effect a division at the time of the divorce. *Id.* at 799.

■ Here, the trial court did not abuse its discretion in selecting the first method—division at the time of dissolution. There were sufficient assets available to make the award to respondent and there was reliable expert testimony on the present value of these benefits. The testimony on the value of the nonvested benefits was not unduly speculative and provided a reasonable basis for the division of the benefits.

2. The trial court made the following cash award to respondent:

As and for a property settlement herein, petitioner shall pay to respondent the sum of $72,300.75, payable in three equal installments of $24,100.25 each on July 1, 1988; July 1, 1989; and July 1, 1990. Said sum shall be subject to petitioner's payment in full at petitioner's option at any time prior to July 1, 1990. Petitioner shall pay nine (9%) per cent interest on the unpaid principal sum of the property settlement, which interest payment for the month shall be due and payable on the first day of each month commencing on May 1, 1985, until said amount has been paid in full.

Appellant's main complaint about this award is that it will necessitate a withdrawal of funds from his benefit plans, causing him to incur tax consequences.

■ At trial, the court sustained respondent's objection to appellant's question about the state and federal tax consequences of withdrawing the benefits on the basis of *Aaron v. Aaron*, 281 N.W.2d 150 (Minn.1979), and *Helland v. Helland*, 354 N.W.2d 591 (Minn.Ct.App.1984), *pet. for rev. denied*, (Minn. Jan. 3, 1985). Although appellant assigns this as error, we agree with the trial court that the tax consequences of withdrawing funds from a pension plan or profit-sharing plan are not properly considered where there is no evidence that the appellant *must* withdraw the funds to satisfy a property settlement. *See Aaron*, 281 N.W.2d at 153. In addition, "[t]o predict the government's tax structure that far in the future would be mere speculation." *Helland*, 354 N.W.2d at 593.

Appellant argues that *Berthiaume v. Berthiaume*, 368 N.W.2d 328 (Minn.Ct. App.1985), is controlling. We disagree. In *Berthiaume*, the trial court determined

that the husband would *have to withdraw* funds from a profit-sharing trust to satisfy his financial obligations to his wife and to meet various debts. Accordingly, it considered tax consequences as certain. This court affirmed, stating:

> Given the evidence presented in the instant case, the trial court's determination that a withdrawal from the trust will be necessary and its consideration of the potential tax consequences of the withdrawal was not an abuse of its broad discretion.

*Id.* at 334.

■ Here, there was no such finding or evidence that a withdrawal of funds will be required. Appellant has substantial earnings and assets. He may elect to sell certain assets or use them as collateral for loans to pay the property settlement. *See Nemitz v. Nemitz,* 376 N.W.2d 243, 248 (Minn.Ct.App.1985), *pet. for rev. denied,* (Minn. Dec. 30, 1985).

Appellant also cites *Brockman v. Brockman,* 373 N.W.2d 664 (Minn.Ct.App.1985), as supporting his position. However, *Brockman* actually supports the trial court decision that tax consequences need not be considered where the court would have to speculate as to appellant's future dealings with the pension funds. *See Brockman,* 373 N.W.2d at 666.

3. Appellant complains that he was unfairly assigned a $21,000 debt which he incurred to pay child support and maintenance during the parties' separation. The trial court apportioned only a small debt of $412 to respondent, representing her hospital and doctor bills.

■ "Debts are apportionable under Minnesota's statute." *Filkins v. Filkins,* 347 N.W.2d 526, 529 (Minn.Ct.App.1984). A trial court should be "guided by equitable considerations in distributing rights and liabilities." *Dahlberg v. Dahlberg,* 358 N.W.2d 76, 80 (Minn.Ct.App.1984) (quoting *Kreidler v. Kreidler,* 348 N.W.2d 780, 784 (Minn.Ct.App.1984)). "Where evidence supports the trial court's division, this court must affirm even if it would have

reached a different conclusion in the first instance." *Yackel v. Yackel,* 366 N.W.2d 382, 384 (Minn.Ct.App.1985).

■ The evidence supports the trial court division. The trial court found that the appellant earns a substantial income and receives substantial benefits while respondent is unemployed and suffering from a depressive episode. Further, the court found that respondent is unable to support herself at this time and that appellant has the financial ability to meet his own needs as well as to aid respondent in meeting hers. The facts are thus similar to those in *Dahlberg* and *Filkins* where this court affirmed the trial court's allocation of substantial debt to the husbands.

4. It is well established that a trial court has broad discretion in awarding spousal maintenance. *Kohner v. Kohner,* 358 N.W.2d 721, 723 (Minn.Ct.App.1984), *pet. for rev. denied,* (Minn. Feb. 27, 1985). The trial court awarded spousal maintenance as follows:

> $2,000 per month from May 1, 1985, to August 31, 1985;
>
> $1,700 per month from September 1, 1985, to April 30, 1987;
>
> $1,500 per month from May 1, 1987 to April 30, 1988; and
>
> $1,200 per month from May 1, 1988, to April 30, 1989.
>
> The Court shall retain jurisdiction, and the award of maintenance is reserved thereafter so that an award of maintenance beyond April 30, 1989, shall be at the discretion of the Court.

Respondent claims that she should have been awarded permanent maintenance of $3,000 per month. She asserts that like the wife in *Arundel v. Arundel,* 281 N.W.2d 663 (Minn.1979), she also has health problems and should receive permanent maintenance. Respondent further points to the 1985 amendments to Minn.Stat. § 518.552 which signal a return to consideration of permanent maintenance as a viable option and asks us to apply *Kennedy v. Kennedy,* 376 N.W.2d 702, 705–06 (Minn.Ct.App. 1985). In *Kennedy,* this court reversed and remanded for further consideration a

temporary maintenance award which was "grossly inadequate" under the controlling statutory guidelines.

 Here, the trial court considered the statutory guidelines and distinguished *Arundel.* The court noted:

In *Arundel,* the parties had been married for twenty-nine years, and the wife had devoted her efforts to raising five children and maintaining a home, while her husband furthered his career. Mrs. Arundel has been out of the job market for thirty years and had no professional education of marketable skill. * * *.

In the instant case, respondent is only forty-four years old and has had a limited amount of post-high school education. Although she has recently suffered from some emotional and physical problems, her psychiatrist indicated that the physical ailments were related to her emotional condition and that therapy and time should enable her to become competitively employed and self-sufficient within four years. Although respondent does not have a professional education and has not worked full time for approximately twenty years, she did do some part-time interior design work for several years and also worked as a part-time retail salesperson at a salary of $4 an hour. At the time of trial, respondent was completing a word processing course, in which she enrolled because the want ads reflect a current demand for word processors. Although respondent stated that she would not like to be employed as a word processor full time, such a skill should allow her the opportunity to obtain part-time employment while she assesses or reassesses her future plans * * *. Respondent has not indicated that she is unwilling or unable to eventually become fully employed and self-supporting.

The trial court also recognized that respondent had received a substantial cash property settlement in addition to the homestead "which should aid [her] in attaining self-sufficiency."

In addition, the trial court retained jurisdiction here on the permanent maintenance issue following the supreme court's recommendation in *Abuzzahab v. Abuzzahab,* 359 N.W.2d 12, 14 (Minn.1984), and *McClelland v. McClelland,* 359 N.W.2d 7, 10 (Minn.1984). *See also Peterson v. Peterson,* 367 N.W.2d 90, 94 (Minn.Ct.App.1985), *pet. for rev. denied,* (Minn. July 17, 1985). Therefore, as appellant notes, respondent's claim for permanent maintenance is premature. In *Servin v. Servin,* 345 N.W.2d 754, 758 (Minn.1984), the court stated:

Ruth Servin claims the court erred in not awarding her permanent spousal maintenance. Her claim is premature. The trial court awarded maintenance for a period of 36 months. In addition, the court stated " * * * provided further alimony for the petitioner is reserved." The disposition of that reserved decision is not before us.

5. Respondent argues that the trial court abused its discretion when it awarded her only partial attorney's fees, $7,500 out of total fees of $16,140. She asserts that we should reverse the trial court's partial award as we did in *Kohner v. Kohner,* 358 N.W.2d 721 (Minn.Ct.App.1984), *pet. for rev. denied,* (Minn. Feb. 27, 1985).

 This case is not like *Kohner,* a case where the wife had already paid almost $13,000 in fees and her limited property settlement would have been depleted if she paid the remaining balance. Here, the trial court did not abuse its discretion in determining that respondent, who was awarded a substantial property settlement in addition to temporary maintenance, should pay a portion of her own attorney's fees.

## DECISION

The trial court did not abuse its discretion in valuing and dividing the parties' assets and liabilities or in awarding respondent partial attorney's fees. Since the trial court reserved jurisdiction over maintenance, respondent's claim for permanent maintenance is premature.

Affirmed.