**In re the Marriage of Richard Aitkin CARRICK, III, Petitioner, Respondent,**

v.

**Ro Ann CARRICK, Appellant.**

No. C9–96–1596.

Court of Appeals of Minnesota.

April 1, 1997.

Barry A. Sullivan, Anoka, for Appellant.

Jeffrey R. Arrigoni, Woodbury, for Respondent.

Considered and decided by HUSPENI, P.J., and PARKER and MULALLY,* JJ.

## OPINION

HUSPENI, Judge.

Appellant contests the trial court's award of temporary spousal maintenance, the award

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

of a nonmarital interest to respondent, the determination that appellant dissipated assets, and the distribution of property. She also requests attorney fees on appeal. Because the trial court erred in finding appellant underemployed in bad faith based on improper consideration of the homemaker's role, erred in determining respondent's income, and made insufficient findings on respondent's expenses, we reverse and remand the issue of spousal maintenance. Because the trial court did not abuse its discretion in dividing property and determining that there had been dissipation of assets, we affirm on those issues.

## FACTS

Appellant, Ro Ann Carrick, and respondent, Richard Carrick, were married in 1974. Respondent brought three children from a prior marriage to the household (ages 2½, 3½, and 9), and the parties had one child together during the marriage. All the children reached the age of majority before dissolution.

Appellant testified as to her limited education and work experience: she attended business college briefly after high school, worked as an office clerk for 18 months, worked as a general office worker for eight years, and also worked briefly as an assembler for a plastics company. Appellant did not work outside the home once she married, except for performing some work for respondent's landscaping business and operating her own "refunding" business. In 1985 she began to work part time (27–30 hours per week) for a bingo hall. She has continued this employment, working mainly as a floor clerk, and earns $6 per hour plus tips.

Respondent worked as a boilerman/engineer. In 1995 he had a gross income of $56,220.37, including overtime pay. Respondent testified he would be losing his job due to company reorganization. He stated he would probably receive a different job at a lower pay rate and without overtime. Respondent's union representative corroborated this testimony.

The trial court found that appellant was intentionally underemployed in bad faith and was capable of working full time. After imputing appellant's gross income to be her earning capacity, $20,000 per year, the court awarded temporary maintenance of $300 per month for two years. The court also found that respondent received $14,000 in nonmarital funds from the sale of his former homestead, and that he used this amount to make capital improvements on the parties' homestead.

The parties lived fairly conservatively during the marriage and saved a significant amount of money in various certificates of deposit and bank accounts. Respondent accused appellant of improperly cashing the certificates and withdrawing funds from the accounts. Appellant admitted taking the money, but offered some explanations. Respondent submitted several cancelled checks written by appellant to local casinos. Appellant also admitted taking funds for two trips to Las Vegas during the pendency of the dissolution. The court found that appellant dissipated some of the marital assets and deducted those amounts from her property award.

The trial court awarded the parties the vehicles in their possession (appellant's valued at $9,000 and respondent's valued at $1,500) and the personal property in their possession (appellant's valued at $15,000 and respondent's valued at $600).

## ISSUES

1. Did the trial court abuse its discretion in awarding appellant temporary spousal maintenance of $300 per month?

2. Did the trial court err in awarding respondent a nonmarital interest in the parties' homestead?

3. Did the trial court err in finding that appellant dissipated assets?

4. Did the trial court abuse its discretion in determining the value of the parties' personal property?

5. Is appellant entitled to attorney fees on appeal?

## ANALYSIS

### 1. Spousal Maintenance

The standard of review for an appeal from a maintenance award is whether the

trial court abused its discretion. *Erlandson v. Erlandson*, 318 N.W.2d 36, 38 (Minn.1982). Before a reviewing court will find an abuse of discretion, a conclusion must be clearly erroneous and against logic and the facts on record. *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn.1984). Appellant contends the trial court abused its discretion in awarding only temporary maintenance of $300 per month and made several erroneous findings to support the award. We find merit in appellant's argument.

A trial court may award maintenance if it finds that the spouse seeking maintenance lacks sufficient property to provide for her reasonable needs or is unable to provide adequate self-support. Minn.Stat. § 518.552, subd. 1 (1996). When determining the amount and duration of maintenance, the court should consider eight factors, including the contribution and effect of a homemaker's role in the marriage. *Id.*, subd. 2 (1996). When the need for a permanent award of maintenance is uncertain, the court shall order a permanent award, leaving the order open for later modification. *Id.*, subd. 3 (1996).

### A. Role of Homemaker—Appellant's Income

■ Because appellant worked only part time and did not seek to change her employment situation after the parties separated, the trial court found appellant "acted in bad faith by remaining intentionally underemployed" and imputed her income to be her earning capacity. Appellant contends the trial court erred in ignoring her contributions as a homemaker in the marriage and in punishing her for maintaining the homemaker lifestyle and that it failed to recognize the value of the homemaker's role and its effect on her earning capacity. We agree.

■ We recognize that a trial court may impute a party's income to be her earning capacity for the purposes of setting maintenance, if it first finds that the party was underemployed in bad faith. *See Bourassa v. Bourassa*, 481 N.W.2d 113, 116 (Minn.App. 1992) (reversing maintenance award where trial court failed to make finding that obligor

was underemployed in bad faith); *see also Warwick v. Warwick*, 438 N.W.2d 673, 677–78 (Minn.App.1989) (extending earning capacity measurement rules from child support cases to spousal maintenance cases). As a matter of law, however, a court may not find bad faith underemployment where, as here, a homemaker has continued to work the same part-time hours at the time of dissolution as she did during the marriage, has been employed in the same type of position as she was during the marriage, and where there is no evidence of any intent to reduce income for the purposes of obtaining maintenance.

In making its determinations, the trial court found appellant

> intentionally underemployed and fully capable of working full-time. [Appellant] has above-average intelligence in numerous respects. * * * [Appellant] has failed to establish any justifiable reason for not being employed full-time and has intentionally not sought full-time employment without reasonable justification. * * * [Appellant] also acknowledged there were no medical restrictions precluding full-time employment. The Court further finds that although [appellant] spent several years as a homemaker, she also participated meaningfully in the parties' landscaping business. * * * [Appellant] has several transferable skills which would serve her well in a variety of employment opportunities resulting in wages considerably higher than her current part-time position.

While the court's findings may constitute a proper assessment of the likelihood that appellant will be successful in rehabilitating after the dissolution, the court's assessment is punitive when applied retroactively to a traditional homemaker whose work history is of a part-time nature.

■ There is no authority for finding bad faith underemployment at the time of an initial award of maintenance merely because a potential obligee has not yet rehabilitated when the record indicates the obligee has continued in the same employment and there is no evidence of an intent to reduce income

for the purposes of obtaining maintenance.[1] Nor do we find persuasive the trial court's observation that appellant had received maintenance since the order for temporary relief issued in July 1995 and "has not made any meaningful efforts to obtain full-time employment." While the trial court might well take into consideration the receipt of maintenance for two years prior to dissolution when establishing the total number of years maintenance will be paid, we are unaware of any authority requiring that a traditional homemaker/part-time employed spouse seeking maintenance must "rehabilitate" and find full-time employment during the period between the temporary order under Minn. Stat. § 518.131 (1996) and the decree of dissolution.

*Nardini v. Nardini,* 414 N.W.2d 184 (Minn.1987), gives valuable guidance to trial courts as they address the issues of maintenance. *Nardini* recognized the unique role of a homemaker at the time of dissolution. *Id.* at 198. The court noted the difficulties facing a homemaker wife at the time of dissolution because she was "expected to abandon what she has known as a career as a homemaker and embark on some undefined new career." *Id.* While the court deemed Ms. Nardini to be an intelligent and capable person, the court also observed that "[b]eing capable of employment and being appropriately employed are not synonymous." *Id.* at 197. The court concluded, in fact, that Ms. Nardini should receive permanent spousal maintenance. *Id.* at 198–99.

The supreme court's decision in *Gales v. Gales,* 553 N.W.2d 416 (Minn.1996), released after the trial court issued its decision in this case, does not weaken the importance of considering the role of the homemaker. While the court in *Gales* determined that an award of permanent maintenance was not appropriate, the court's holding emphasizes once more the significance of traditional, long-term marriage relationships when determining maintenance. *Id.* at 419, 421. The court distinguished *Nardini* because the Galeses' marriage involved a relatively shorter term marriage (11 years), younger parties (wife was 32), and an obligee spouse who had "pursued her own business career" during the marriage. *Id.* at 421.

The parties here were married more than 21 years. While appellant worked full time prior to the marriage, she did not work outside the home for the first ten years of the marriage. She was a full-time homemaker and caretaker of four small children: the parties' own child and three children of respondent's prior marriage. For the last ten years of the marriage she worked on a part-time basis only. She was 49 years old at the time of the decree. There was no evidence that she intentionally stayed in her part-time position, or that she changed to a lower-paying position in order to collect more spousal maintenance. Rather, the evidence indicated that appellant earned a reasonable income from the position, enjoyed working at the bingo hall, and was very committed emotionally to the job.

The trial court erred in finding that appellant limited her income in bad faith. We remand the issue of maintenance to enable the court to utilize a gross income of $15,000 (wages and tips) for appellant when calculating her need for maintenance.[2]

---

1. We note that once temporary maintenance has been awarded, an obligee generally has a duty to rehabilitate. *See* Minn.Stat. § 518.552, subd. 2(a) (1996) (in setting the amount and duration of maintenance, a trial court is to consider among other things the recipient's "ability to meet needs independently"); *see also Katter v. Katter,* 457 N.W.2d 750, 753 (Minn.App.1990). The good faith failure of a spouse to rehabilitate fully while receiving temporary maintenance may be a changed circumstance justifying continuation or modification of the maintenance under Minn.Stat. § 518.64 (1996). *Id.; see also Hecker v. Hecker,* 543 N.W.2d 678, 679 (Minn.App.1996) (temporary maintenance recipient's willful failure to rehabilitate did not require permanent maintenance award, but court may impute recipient's earning capacity as income), *review granted* (Minn. Apr. 16, 1996).

2. We see no error in the trial court's imputation of the additional tip income based on the evidence presented. *See Hertz v. Hertz,* 304 Minn. 144, 147–48, 229 N.W.2d 42, 45 (1975) (imputing entire net income of obligor's company to obligor's income for purposes of setting maintenance). This imputation does not invoke a finding of bad faith.

### B. Respondent's Income

Appellant contends the trial court erred in determining respondent's income. The record indicates that respondent worked as a boilerman/engineer and had a gross income of $56,220.37 in 1995, including overtime. He testified that his overtime had been cut at the time of trial and he was slated to lose his position due to company reorganization. He believed he would receive another position with the same company, but at a lower pay rate. A union official confirmed that appellant would lose his position, and he would likely receive a new position with a lower salary.

We note that the evidence was not conclusive as to when the job change would actually occur. The union representative indicated that the change was due to occur in July, August, or September 1996. The trial court, however, based its award of maintenance on respondent's anticipated reduced salary. While the decree which reduced the amount of maintenance became effective in June 1996,[3] the trial court erred in relying on the change in income before it had actually occurred. Respondent's maintenance obligation should have been calculated based upon his income at the time of trial. The trial court could have provided in the decree for a review hearing or respondent could have moved subsequently for modification under Minn.Stat. § 518.64 if his predictions of a reduced income became reality. Upon remand the trial court shall determine maintenance based upon respondent's actual income at the time of the trial.[4]

### C. Living Expenses

The court found appellant's necessary monthly living expenses to be $1,300. In making this finding the trial court noted that appellant set forth "varying amounts of reasonable monthly expenses in numerous pleadings and discovery." Appellant claimed monthly expenses varying from almost $2,500 to just under $800. The amounts of specific expenses also varied within the different budgets submitted. While appellant complains of disparities between the trial court's findings for her expenses versus those of respondent, she has the benefits of a low monthly mortgage payment and a newer, unencumbered vehicle. Thus, we see no error in the trial court's finding on this issue.

The trial court found respondent's monthly living expenses to be $2,547.50 and found them to be undisputed. The record does not support the finding of "undisputed"; appellant's cross-examination of respondent on this issue at least challenged his expenses. Therefore, we must remand this issue to enable the trial court to make appropriate findings based upon credibility assessments of the testimony regarding respondent's living expenses.

Because appellant's role as a homemaker, the parties' incomes, and respondent's expenses are important factors for calculating the amount and duration of spousal maintenance under Minn.Stat. § 518.552, subd. 2, we reverse and remand the maintenance issue. In view of the public policy considerations set forth in *Nardini* and subsequent case law, we invite the trial court on remand to reconsider whether, pursuant to Minn. Stat. § 518.552, subd. 3 (1996), there may be "some uncertainty as to the necessity of a permanent award," requiring a permanent award and leaving the order open for later modification.

### 2. Nonmarital Interest

Respondent claimed a nonmarital interest in the parties' homestead. He testified that he owned a house prior to the marriage that was sold on a contract for deed, received a $14,000 balloon payment six or seven years later, and used the money to finance homestead improvements. Appellant argues that respondent failed to meet his

---

**3.** The temporary order set maintenance at $150 per week, plus 25 percent of respondent's overtime during the pendency of the dissolution, while the final decree set maintenance at $300 per month.

**4.** Also on remand, upon proper documentation by respondent, the trial court may elect to save the financial and emotional resources of the parties and incorporate into the decree an appropriate modification of maintenance effective as the date (subsequent to the entry of the decree) that respondent's income did, in fact, decrease.

burden of tracing, particularly because he deposited the funds in the parties' joint accounts. We find no error in the trial court's recognition of respondent's nonmarital interest in the homestead.

Commingling of nonmarital and marital property is not fatal to a party's claim that property remained nonmarital. *Swick v. Swick,* 467 N.W.2d 328, 330 (Minn. App.1991), *review denied* (Minn. May 16, 1991). There is not a "strict tracing" standard, but a party need only show by a preponderance of the evidence that the asset was acquired in exchange for nonmarital property. *Doering v. Doering,* 385 N.W.2d 387, 390 (Minn.App.1986). Appellant admitted that respondent received the balloon payment and used the money for improvements to the homestead; she merely contested the amount. We therefore affirm the trial court's finding that respondent sufficiently traced the $14,000 nonmarital interest.

### 3. Dissipation of Assets

During the pendency of a marriage dissolution, * * * each party owes a fiduciary duty to the other for any profit or loss derived by the party, without the consent of the other, from a transaction or from any use by the party of the marital assets.

Minn.Stat. § 518.58, subd. 1a (1996). The trial court found that appellant dissipated several marital assets, including two certificates of deposit and monies from the parties' joint checking account. Appellant admitted cashing the certificates and the record indicates she took the funds from the checking account. Further, she admitted taking two trips to Las Vegas during the time before the dissolution, and respondent submitted numerous checks written by her to local casinos.

In addition, appellant made a withdrawal of $32,709.32 from the parties' investment accounts by way of a cashier's check. Pursuant to a court order, the parties' attorneys were each to have received $3,000 and the balance of the check was to be deposited in a joint account. The trial court found that the deposit should have been $26,709.32, but that appellant only deposited $25,186.39 and dissipated the balance of the funds.

Appellant argues that the trial court erred in determining the dissipation because neither party noted the discrepancy. We disagree. Respondent included this issue in his proposed findings. While the record does not specifically note how appellant used the money, it is clear that she spent a significant amount of money during the pendency of the dissolution on gambling. Further, testimony indicated that appellant was transferring money through her family members and various accounts. Therefore, we affirm the trial court on this issue.

### 4. Personal Property

A trial court has broad discretion in dividing property. *Rutten,* 347 N.W.2d at 50. The lower court need not be exact in its valuation of assets; "it is only necessary that the value arrived at lies within a reasonable range of figures." *Johnson v. Johnson,* 277 N.W.2d 208, 211 (Minn.1979). The trial court found that the fair market value of the personal property in appellant's possession was $15,000 while the fair market value of the property in respondent's possession was $600. Respondent offered photographs of the items and testified that he believed those amounts to be correct. While appellant disputed these dollar amounts, she failed to offer any other information as to the proper values. Thus, we conclude that the trial court properly exercised its discretion in establishing the value of these items.

### 5. Attorney Fees

We grant appellant's motion for attorney fees on appeal and will award an amount of fees by separate order.

### DECISION

The issue of spousal maintenance is reversed and remanded. The trial court determinations regarding nonmarital interests, dissipation of assets, and distribution of property are affirmed.

**Affirmed in part, reversed in part, and remanded.**