**In re the Marriage of Rosemary Ann MAURER, petitioner, Appellant,**

v.

**Michael Patrick MAURER, Respondent.**

No. C7–99–1319.

Court of Appeals of Minnesota.

March 14, 2000.

Review Granted May 16, 2000.

Kay R. Snyder, Burns Law Offices, St. Cloud, MN, for appellant.

Thomas Zupanc, Zupanc Law Offices, St. Cloud, MN, for respondent.

Considered and decided by TOUSSAINT, Chief Judge, CRIPPEN, Judge, and FOLEY*, Judge.

## OPINION

DANIEL F. FOLEY, Judge.

In its original May 14, 1999, judgment, the district court awarded appellant temporary spousal maintenance of $100 per month for one year. The parties moved for amended findings and appellant alternatively moved for a new trial. On June 28, the district court (1) issued amended findings of fact and conclusions of law; (2) awarded permanent spousal maintenance of $100 per month; and (3) denied appellant's motion for a new trial. Appellant challenges the district court's spousal maintenance award and its imputation of earning capacity income to appellant. Appellant also challenges the district court's property ·division because the court (1) considered the tax consequences of withdrawing respondent's retirement assets, and (2) reallocated the retirement assets to account for marital debt incurred by respondent during the parties' separation. In addition, appellant contends the district court erroneously denied her request for attorney fees.

## FACTS

Appellant Rosemary Ann Maurer and respondent Michael Patrick Maurer were married in 1971. While appellant does not have a post-secondary degree, she earned approximately 100 credit hours at the University of Minnesota and is a certified medical laboratory assistant. Between 1972 and 1978, before becoming a full-time homemaker in 1979, appellant worked as a

medical laboratory assistant for two different companies. In 1989, appellant returned to work as a sales clerk, but quit when she became pregnant.

In 1990, appellant began working for the St. Cloud School District so she could spend the summer months and all non-school hours with the children. While working for the school district, appellant received promotions and pay raises and currently earns $10.12 per hour as a special education paraprofessional. Appellant works 35 hours a week during the school year and 25 hours a week during the six weeks of summer school.

In March 1997, the parties separated and appellant sought treatment for depression. Dr. Elizabeth Super diagnosed appellant with an adjustment disorder, described as mixed anxiety and depression. In December 1998, due to the duration of appellant's reported depression and exposure to additional major life stressors during her treatment, Dr. Super diagnosed appellant with dysthymia, a more severe and chronic adjustment disorder. Dr. Susan Luce, a rehabilitation consultant and vocational evaluator who evaluated appellant, testified that dysthymia is not severe by definition and opined that nothing significant was impeding appellant's occupational potential. While appellant claims her dysthymia prevents her from obtaining full-time employment, the district court found that appellant was capable of working full time, many employment opportunities are available in St. Cloud, and appellant would be eligible for jobs paying between $6.50 and $12.25 per hour.

Respondent is a 50–year–old, partially disabled Vietnam veteran suffering from posttraumatic stress disorder (PTSD). After graduating from the University of Minnesota with a Bachelor of Science degree, respondent worked for the Minnesota Department of Natural Resources for

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

23 years. From the parties' separation through trial, respondent paid appellant approximately $400 every other week in support. While respondent was not in debt at the time of the parties' separation, he has paid in excess of $20,000 to support appellant during their separation and had incurred substantial debt by trial.

At trial, appellant sought permanent spousal maintenance of over $800 per month. After reviewing appellant's financial and tax information, the district court found that appellant: (1) has net monthly income of $1,182; (2) will receive $683 in child support payments through June 2000; (3) works 75% of full-time employment; and (4) has monthly expenses of $1,871, including $1,697 for herself and $174 for her daughter. The district court found that respondent: (1) has net monthly income of $2,381; (2) will continue to pay $683 per month in child support through June 2000; (3) receives a monthly Veteran's Administration disability payment of $351 for PTSD, which increases his total net monthly income to $2,732; and (4) without including his monthly child support obligation, has monthly living expenses of $1,901, including $1,563 for himself and $338 for his daughter. The district court based its award of $100 permanent monthly spousal maintenance and division of property on these figures. This appeal followed.

## ISSUES

1. Did the district court abuse its discretion by imputing earning capacity income to appellant in awarding permanent spousal maintenance of $100 per month?

2. Did the district court err in assessing the relative financial situations of the parties in setting its permanent spousal maintenance award at $100 per month?

3. Did the district court err in considering the tax consequences of respondent's retirement benefits when valuing such assets for property distribution?

4. Did the district court err in considering the debt incurred by respondent during the separation when allocating marital debts and assets to achieve an equitable distribution of the marital property?

5. Did the district court err in denying appellant's request for attorney fees?

## ANALYSIS

Appellant contends the district court improperly imputed income to her for the purpose of determining spousal maintenance. A district court's spousal maintenance determination will not be disturbed absent an abuse of that court's discretion. *Erlandson v. Erlandson,* 318 N.W.2d 36, 38 (Minn.1982). This court will not find an abuse of discretion unless the district court's resolution of the matter "is against logic and the facts on record." *Rutten v. Rutten,* 347 N.W.2d 47, 50 (Minn.1984) (citation omitted). Unless the findings of fact are clearly erroneous, they must be upheld. Minn. R. Civ. P. 52.01; *Gessner v. Gessner,* 487 N.W.2d 921, 923 (Minn.App.1992).

### I.

In setting spousal maintenance, the district court imputed income to appellant because it found that while "capable of working full-time," she only worked 75 percent of full time. The district court explained that "[u]sing [appellant's] current monthly income of $1,182 as a basis at 75% of full employment, [appellant] could reasonably earn $1,576 net income per month at full-time employment." In order to impute income to a party for the purpose of setting maintenance, the court must find that the party was voluntarily under employed in bad faith. *Carrick v. Carrick,* 560 N.W.2d 407, 410 (Minn.App. 1997). This court explained that

[a]s a matter of law * * * a court may not find bad faith underemployment where * * * a homemaker has continued to work the same part-time hours at the time of dissolution as she did during the marriage, has been employed in the

same type of position as she was during the marriage, and where there is no evidence of any intent to reduce income for the purposes of obtaining maintenance.

*Id.* at 410.

In *Carrick*, the trial court found that the petitioner was intentionally underemployed, completely capable of working full time, had above-average intelligence, and offered no justification or medical reason for not being employed full time. *Id.* Despite recognizing the petitioner's role as a homemaker, the trial court found that her participation in the parties' landscaping business, together with her "transferable skills," made her capable of obtaining full-time employment at a considerably higher wage. *Id.* This court explained that although the trial court's findings may be an appropriate assessment of the likelihood that the petitioner would become self-sufficient after the dissolution, applying the findings retroactively to a traditional homemaker whose work history is part-time is punitive. *Id.* Because no authority exists for finding that an obligee continuing to work in the same employment without intent to reduce income in order to obtain maintenance is underemployed in bad faith, this court concluded that imputing earning capacity income is improper. *Id.* at 410–11.

■ Similar to the parties' long-term marriage in *Carrick*, appellant and respondent were married for nearly 28 years. The petitioner in *Carrick* did not work outside the home after marriage, except to help with her husband's landscaping business and operate her own "refunding" business. *Id.* at 409. Although appellant worked as a medical laboratory assistant for two companies after marriage, she did not work outside the home between 1978 and 1989. Appellant, like the petitioner in *Carrick*, was a full-time homemaker and did not take on a part-time job until the last several years of marriage. Similar to the homemaker in *Carrick*, appellant here is now 49 years old. There was no evi-

dence that either person intentionally remained in part-time employment to limit income for the purpose of obtaining spousal maintenance. Instead, as in *Carrick*, the evidence in this case shows that appellant earns reasonable income from her part-time teacher's aide position, enjoys the job, and is emotionally committed and attached to the position.

Despite the factual similarities between the two cases, respondent argues that *Carrick* is distinguishable because, unlike the present case, it dealt with an award of temporary maintenance. Although *Carrick* was a temporary maintenance case, this court did not limit its holding to either form of spousal maintenance. This court simply stated that, as a matter or law, a district court cannot find bad faith where a homemaker continues to work the same hours in the same position and there is no evidence of a deliberate attempt to self-limit income to obtain maintenance. *Carrick*, 560 N.W.2d at 410. Because the *Carrick* holding was not premised on the type of maintenance awarded, its holding is equally applicable to cases involving either temporary or permanent spousal maintenance.

Nevertheless, respondent also contends that *Carrick* is factually distinguishable. Respondent argues that appellant's 100 credit hours at the University of Minnesota, certification as a medical laboratory assistant, work outside the home after marriage as a certified medical lab assistant for two different companies between 1972 and 1978, and previous part-time positions, as well as respondent's gross annual income, are significant.

While there are factual differences, none make the analysis or holding of *Carrick* inapplicable. As a matter of law, a court may not impute income—because no bad faith exists—where a homemaker continues to work the same part-time hours at the same position and there is no evidence of intent to artificially reduce income. *Carrick*, 560 N.W.2d at 410. The fact that

appellant may have more extensive post-secondary education and some employment after marriage does not make *Carrick* inapplicable because those facts do not establish bad faith or intent to reduce income. *Carrick* is controlling. The district court improperly imputed income to appellant for the purpose of setting spousal maintenance.

## II.

### Amount of Maintenance

■ Appellant contends that permanent spousal maintenance of $100 per month is inadequate under the facts of this case. Maintenance awards are governed by Minn.Stat. § 518.552, subd. 1 (1998), which allows a court to grant maintenance if a spouse (1) lacks sufficient property to provide for "reasonable needs * * * considering the standard of living established during the marriage," or (2) cannot provide self-support. In determining spousal maintenance, the district court must consider "the financial resources of the party seeking maintenance * * * and the party's ability to meet needs independently" and "the ability of the spouse from whom maintenance is sought to meet needs while meeting those of the spouse seeking maintenance." Minn.Stat. § 518.552, subd. 2(a), (g); see *Bourassa v. Bourassa,* 481 N.W.2d 113, 115 (Minn.App.1992) (explaining that task basically to balance recipient's need against obligor's financial condition). In addition, a district court shall order maintenance in an amount the court deems just after considering all relevant factors, including the contribution and role of a homemaker in the marriage. *Carrick,* 560 N.W.2d at 410 (citing Minn.Stat. § 518.552, subd. 2).

■ The record shows that appellant's net monthly income of $1,182 is considerably less than the combined monthly need of $1,871 for her and her daughter. While appellant receives $683 per month in child support, that will terminate when her daughter turns 18 after June 2000. In contrast, the record shows that respondent's net monthly income of $2,381 is considerably greater than his expenses, which total $1,563 for himself and $338 for his daughter. Moreover, while respondent will pay $683 a month for child support through June 2000, he will continue to collect a $351 disability payment from the Veteran's Administration each month.[1]

■ In determining the amount of spousal maintenance, the district court considered (1) appellant's ability to meet her monthly expenses from her net monthly income, including child support; (2) appellant's ability to provide more adequate self support through new full-time employment; (3) the equality of the property division; (4) appellant's age and the long-term marriage; (5) the lack of any physical or emotional limitations on appellant's ability to obtain full-time employment; (6) the uncertainty of appellant's ability to be self-sufficient once child support payments cease; and (7) respondent's limited ability to help meet appellant's needs. The district court awarded $100 permanent monthly spousal maintenance because it concluded that appellant's needs were almost met by her net monthly income and child support payments, and that respondent has only a limited ability to contribute to appellant's needs while meeting his own. While the maintenance award is premised on consideration of the relevant statutory factors and appellant's need and respondent's ability to pay, we conclude that it was influenced by the district court's erroneous imputation of income to appellant rather than the realities of the parties' relative financial situations. Findings of fact that are controlled or influenced by an error of law are not final on appeal and

---

[1] While military disability payments may not be divided as a marital asset, a district court may consider such benefits in setting spousal maintenance. *Sward v. Sward,* 410 N.W.2d 442, 444 (Minn.App.1987), *review granted* (Minn. Sept. 30, 1987) and *appeal dismissed* (Minn. Dec. 2, 1987); *see also* Minn.Stat. § 518.54, subd. 6 (1998) (defining "income" to include "military and naval retirement, pension and disability payments").

will be set aside. *In re Holden's Trust,* 207 Minn. 211, 227, 291 N.W. 104, 112 (1940). This error compels a remand for reconsideration of the amount of permanent monthly spousal maintenance.

*Duration*

 Where a district court is uncertain as to the need for permanent maintenance, there is a statutory preference for permanent maintenance, leaving the order open for subsequent modification. Minn. Stat. § 518.552, subd. 3; *see Nardini v. Nardini,* 414 N.W.2d 184, 196 (Minn.1987). Because the district court found that it was uncertain whether appellant would be able to support herself once child support payments cease in June 2000, the court's permanent maintenance award was appropriate. *See* Minn.Stat. § 518.552, subd. 3 (1988) (stating that "[w]here there is some uncertainty as to the necessities of a permanent [maintenance] award, the court shall order a permanent award leaving its order open for later modification"); *Gessner,* 487 N.W.2d at 924 (stating that district court only needs to find uncertainty concerning future to justify permanent maintenance award); *Nardini,* 414 N.W.2d at 196 (explaining that "doubts with respect to duration [of maintenance] are to be resolved in favor of permanency"). Considering the uncertainty of appellant's employment and economic future, the district court did not abuse its discretion awarding permanent spousal maintenance.

### III.

 Appellant contends the district court erred in considering the tax consequences of the liquidation of respondent's retirement assets in valuing the assets. A district court may consider the tax consequences of a property award as one of the many factors pertinent to an equitable division of property. *Brockman v. Brockman,* 373 N.W.2d 664, 665 (Minn.App. 1985). The district court considered the marginal tax rate because the retirement funds will be taxable upon distribution and it would be unrealistic and unfair to value the retirement funds at their full pre-tax amount. Because the marginal tax rate is the lowest possible tax rate that would apply to the funds, the court considered the tax consequences of the actual distribution of the funds, knowing that state and federal taxes would diminish the funds by at least 35 percent.

██ A court may not consider tax consequences where it must speculate as to a party's future dealing with the property. *O'Brien v. O'Brien,* 343 N.W.2d 850, 854 (Minn.1984). In fact, unless a taxable event is required by the dissolution decree or is certain to occur within a short time thereafter, it is improper to consider tax consequences. *See Aaron v. Aaron,* 281 N.W.2d 150, 153 (Minn.1979) (suggesting tax consequences are properly considered when a taxable event will occur shortly after the dissolution); *Helland v. Helland,* 354 N.W.2d 591, 592–93 (Minn.App.1984) (same), *review denied* (Minn. Jan. 3, 1985). More specifically, the tax consequences of withdrawing retirement funds are not properly considered where there is no evidence that the funds must be withdrawn to satisfy a property settlement. *Hattstrom v. Hattstrom,* 385 N.W.2d 332, 336 (Minn. App.1986), *review denied* (Minn. June 30, 1986); *see Brockman,* 373 N.W.2d at 666 (holding it improper to speculate about tax consequences regarding uncertain future dealings with the property).

In this case, a taxable event will occur when respondent cashes in his retirement funds or terminates his employment, allowing him to collect his deferred compensation. Neither taxable event is required by the dissolution decree. When asked whether he intended to cash in his Minnesota State Retirement Plan, respondent testified that he was "considering it," but did not know. When asked if he planned to terminate his employment, respondent testified that he was "thinking about it," but had no definite plans to do so. Because there is no evidence that either taxable event is certain to occur within a

short time after the dissolution decree, the district's court's consideration of the marginal tax rate for the liquidation of the retirement assets was speculative. The district court must revisit the property settlement because the consideration of the tax consequences rendered the division of property inequitable.

### IV.

Appellant also challenges the division of property because the court reallocated respondent's debt and awarded respondent retirement assets that were originally awarded to appellant. Under the original judgment, appellant was to receive the Janus Funds Account valued at $3,321. Because the amended judgment reduced her share of those retirement funds to $250, appellant argues the district court improperly reallocated the retirement assets and diminished her share of the property by $3,071.

The evidence shows that respondent incurred credit card debt in an amount between $5,000 and $10,000 while making voluntary payments to appellant during the parties' separation. Because that debt was incurred for the benefit of both parties and was reasonable in light of their relative incomes, the district court found respondent's marital debt to be $5,000. Appellant's marital debt was determined to be $678. After allocating the marital assets and debts, the district court found that awarding appellant $77,486 and respondent $77,480 would effect an equitable division of the property.

 In marital dissolution proceedings, the district court has broad discretion regarding the division of marital property and will not be reversed on appeal absent a clear abuse of discretion. *Crosby v. Crosby*, 587 N.W.2d 292, 296 (Minn.App. 1998), *review denied* (Minn. Feb. 18, 1999). Moreover, debts are apportioned as part of the property settlement and are divided in the same manner as assets. *See Korf v. Korf*, 553 N.W.2d 706, 712 (Minn.App.1996) (explaining that property divisions reasonably based in fact and principle will be

affirmed); *see also Hattstrom*, 385 N.W.2d at 337 (suggesting that courts should attempt to achieve equity when distributing rights and liabilities). While the district court appropriately apportioned the marital debt between the parties to achieve an equitable distribution of the marital property, imputing income to appellant and considering the tax consequences of respondent's retirement assets improperly affected the valuation and division of the property. Thus, on remand, the district court must make an appropriate and equitable distribution of property in light of this decision.

### V.

 Finally, appellant argues the district court erred in denying her motion for attorney fees at trial. A court shall award attorney fees when it finds that (1) "the fees are necessary for the good-faith assertion of the party's rights," but will not unduly increase the length or expense of the proceedings; (2) the party from whom the fees are sought has the ability to pay the fees; and (3) the party seeking the fees does not have the means to pay the fees. Minn.Stat. § 518.14, subd. 1 (1998). But this court will uphold a district court's denial of a request for attorney fees absent an abuse of discretion by that court. *Walker v. Walker*, 553 N.W.2d 90, 97 (Minn.App.1996).

> [T]he failure to award attorney fees cannot be characterized * * * as an abuse of discretion where the property and income of the parties, following the reapportionment of the marital property and the award of permanent maintenance, should be relatively evenly balanced.

*Nardini*, 414 N.W.2d at 199.

 In denying appellant's request for attorney fees, the district court found that "the income, expenses and equal property division attributed to each party render them capable of paying their own attorney fees." While the district court properly

considered the financial resources of each party in concluding that each had the individual means to pay attorney fees, we conclude the district court abused its discretion in setting maintenance and distributing the marital property. Because these errors inevitably affected the district court's view of each party's financial situation, the court is directed to revisit the issue of attorney fees on remand.

## DECISION

The district court improperly imputed earning capacity income to appellant for the purpose of setting spousal maintenance. The district court's spousal maintenance award was appropriately premised on the relevant statutory considerations, but because we conclude that the record does not support the award made by the district court, we remand for reconsideration of the amount of permanent monthly spousal maintenance. Also, because the district court erred in imputing income to appellant and in considering speculative tax consequences of withdrawal of respondent's retirement assets, the property distribution and issue of attorney fees are remanded. While the district court may properly consider respondent's Veteran's Administration disability benefits as income for the purpose of setting spousal maintenance, the trial court is reminded of the exemption of military disability benefits from property division in dissolution cases. *See* 10 U.S.C. § 1408(a)(4), (c), 42 U.S.C. § 659(a) (1998).

**Affirmed in part, reversed in part, and remanded.**