# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A23-0644

Metropolitan Transportation Network, Inc., et al.,
Appellants,

vs.

Collaborative Student Transportation of Minnesota, LLC, et al.,
Respondents.

**Filed April 15, 2024**
**Affirmed**
**Frisch, Judge**

Hennepin County District Court
File No. 27-CV-21-6224

Damon L. Ward, Ward Law Group, St. Louis Park, Minnesota; and

Lateesa T. Ward, Ward & Wilson, Minneapolis, Minnesota (for appellants)

Ashley R. Thronson, Erin Edgerton Hall, Fredrikson & Byron, P.A., Minneapolis, Minnesota (for respondents)

Considered and decided by Frisch, Presiding Judge; Worke, Judge; and Gaïtas, Judge.

## SYLLABUS

1.      A party may use allegations in a verified complaint to support or oppose a motion for summary judgment if (1) the allegations are made on personal knowledge, (2) the allegations are based on facts that would be admissible in evidence, and (3) the face of the complaint shows the competence of the verifying party to testify on the matters stated, consistent with Minn. R. Civ. P. 56.03(d).

2. Minnesota does not recognize a cause of action for breach of an illusory contract.

## OPINION

**FRISCH**, Judge

In this dispute involving the provision of transportation services to school districts, appellants, transportation-service providers, challenge the summary-judgment dismissal of multiple claims against respondents, transportation-service coordinators and consultants, arising out of allegations that respondents engaged in misdeeds causing appellants to lose or forego actual and prospective business opportunities. Because breach of illusory contract is not a cognizable cause of action under Minnesota law and the summary-judgment record does not contain evidence presenting a genuine issue for trial on appellants' other claims, we affirm the district court's entry of summary judgment.

## FACTS

Appellants Metropolitan Transportation Network, Inc. (MTN), Tashitaa Tufaa, Safe Tree Transportation, LLC (STT), and Mustafa Wake challenge the summary-judgment dismissal of certain counts of their 13-count complaint against respondents Collaborative Student Transportation of Minnesota (CSTMN) and CESO Transportation, LLC (CESO). The facts, taken in the light most favorable to appellants as the nonmoving party, are as follows.

Appellants STT and MTN offer transportation services to school districts. Wake and Tufaa are the respective owners of those entities. Respondent CSTMN is an entity that contracts with schools to provide a specific type of transportation. Dillon LaHaye is the

2

owner and chief of staff of CSTMN. CSTMN subcontracts with vendors, such as STT and MTN, that provide the equipment and drivers needed to service the routes. Respondent CESO is an entity that offers schools transportation consulting services, including through "full service" contracts whereby CESO works with a school "as their transportation department," including working with transportation vendors. During the time relevant to this action, CESO provided "full service" consulting for the Stillwater Area Public Schools (Stillwater) and St. Anthony-New Brighton School Districts (St. Anthony). Lance Libengood is the majority owner of CESO. Libengood and LaHaye are cousins. CESO and CSTMN share space at the same address. CESO provides transportation staffing to CSTMN.

CSTMN and STT executed service agreements for the 2019-2020 school year (2019 STT-CSTMN service agreement) and the 2020-2021 school year (2020 STT-CSTMN service agreement). These agreements contained the following nonsolicitation provision:

> CONTRACTOR will not directly or indirectly solicit or accept direct service contracts with any of CSTMN's current or former Minnesota clients, customers or users during the life of the contract or for 18 months after the final date of the AGREEMENT between the CONTRACTOR and CSTMN has terminated, unless given written approval from CSTMN's Chief of Staff.

Notwithstanding this nonsolicitation provision, STT submitted a bid to or executed a direct contract with at least one entity that CSTMN identified as its customer.

MTN also executed a service agreement with CSTMN for the 2019-2020 school year (2019 MTN-CSTMN service agreement). The 2019 MTN-CSTMN service agreement did not contain a nonsolicitation provision. In June 2020, MTN executed a

3

direct transportation services contract with Stillwater with a term of August 1, 2020, to June 30, 2024. And in March 2021, MTN executed a direct transportation services contract with St. Anthony for the 2020-2025 school years.

In January and February 2021, Libengood, acting on behalf of Stillwater, and MTN communicated repeatedly about whether MTN would be able to cover transportation routes or whether Stillwater would need to seek support from other transportation providers in light of a driver shortage. In April 2021, Stillwater notified MTN that MTN breached their direct-services contract, citing numerous violations including "[f]ailing to hire sufficient staff to provide the services identified in the Agreement." MTN promised future compliance, but problems continued. Stillwater filed an action against MTN and sought a temporary restraining order, which a district court granted in September 2021. Separately, CSTMN sued STT in spring 2021 for breach of contract.

Appellants commenced this action generally claiming that respondents acted unlawfully to prevent them from providing transportation services to school districts. Following motion practice, appellants filed a verified second-amended complaint. The verified complaint includes 13 counts: declaratory judgment; breach of illusory contract; breach of the implied covenant of good faith and fair dealing; two counts of tortious interference with contracts; two counts of tortious interference with a prospective business advantage; unjust enrichment; restraint of trade in violation of Minn. Stat. § 325D.51 (2022); restraint of trade in violation of Minn. Stat. § 325D.53, subd. 2(1) (2022); racial discrimination in violation of 42 U.S.C. § 1981 (2018); business discrimination based on

4

race and national origin in violation of Minn. Stat. § 363A.17(3) (2022); and restraint of trade in violation of Minn. Stat. § 325D.53, subd. 1(2) (2022).

In March 2022, Stillwater terminated its direct-services contract with MTN. And in June, St. Anthony notified MTN that it would be removing routes and imposing fines for ongoing contract violations.

In September 2022, after discovery, respondents moved for summary judgment on all of appellants' claims, which appellants opposed. The district court granted the motion, concluding that appellants failed to present a genuine issue for trial on any of their claims. In so doing, the district court determined that portions of documents upon which appellants relied in opposition to summary judgment would not be admissible evidence at trial.

This appeal follows.

## ISSUES

I.  Did the district court err by determining that certain documents did not contain evidence admissible at trial or were not part of the record at summary judgment?

II.  Did the district court err by granting summary judgment to respondents?

## ANALYSIS

Summary judgment is appropriate if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Minn. R. Civ. P. 56.01. When reviewing a summary-judgment ruling, "we review [de novo] whether there are any genuine issues of material fact and whether the district court erred in its application of the law." *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76-77 (Minn. 2002). "We view the evidence in the light most favorable to the party against whom summary

5

judgment was granted." *Id.* The moving party bears the burden of showing that there is no genuine issue of material fact. Minn. R. Civ. P. 56.01. But if the moving party supports its motion, then "the nonmoving party must present specific facts showing that there is a genuine issue for trial." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn. 1997) (quotation omitted). The nonmoving party "must do more than rest on mere averments." *Id.* at 71. Rather, it must produce evidence that is "sufficiently probative with respect to an essential element of the nonmoving party's case to permit reasonable persons to draw different conclusions." *Id.* No genuine issue of material facts exists "when the nonmoving party presents evidence which merely creates a metaphysical doubt as to a factual issue." *Id.* "A defendant is entitled to summary judgment as a matter of law [if] the record reflects a complete lack of proof on an essential element of the plaintiff's claim." *Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn. 1995).

Appellants argue that the district court erred in granting summary judgment because (1) the district court improperly disregarded evidence set forth in certain documents identified by appellants as presenting genuine issues for trial and (2) genuine issues of material fact preclude the entry of summary judgment on certain claims set forth in the verified complaint. We address each issue in turn.

## I. The district court properly disregarded evidence at summary judgment that would not be admissible at trial and documents outside of the record.

Appellants argue that the district court was required to consider statements set forth in the verified complaint, Tufaa's declaration, and Wake's declaration in evaluating the existence of genuine issues of material fact for trial. They assert that certain statements set

6

forth in those documents raised genuine and material fact issues for trial and that, had the district court properly credited this evidence, it could not have granted the summary-judgment motion. The district court declined to consider statements set forth in these documents at summary judgment because Wake's declaration was not properly made a part of the summary-judgment record, and the statements set forth in the verified complaint and Tufaa's declaration would not be admissible evidence at trial because they are not based on personal knowledge and/or merely set forth assertions without a factual basis.

First, Wake's declaration was not filed in district court in this matter and is not contained in the record on appeal. "The documents filed in the trial court, the exhibits, and the transcript of the proceedings, if any, shall constitute the record on appeal in all cases." Minn. R. Civ. App. P. 110.01. Because the declaration was not part of the summary-judgment record, the district court properly declined to consider it. Minn. R. Civ. P. 56.03(a) (stating that a party may support a factual position by "citing to particular parts of material in the record"). And because it was not before the district court, we decline to consider it on appeal. *Thiele v. Stich*, 425 N.W.2d 580, 582-83 (Minn. 1988) (stating that generally we will not consider matters outside the record on appeal or evidence not produced and received in the district court).

We are not persuaded by appellants' argument that, notwithstanding the fact that Wake's declaration was not part of the summary-judgment record in this matter, the district court should still have considered it because the document was filed in a separate matter. Minnesota law does not require a district court to consider as part of its summary-judgment record documents filed in another matter. *See* Minn. R. Civ. P. 56.03(c) (stating that a

7

district court "may" consider materials "in the record"). And it appears from the district court's order that it did not access Wake's declaration such that it considered the document in making its summary-judgment decision. We therefore decline to consider the Wake declaration in our review on appeal. *See MacDonald v. Brodkorb*, 939 N.W.2d 468, 474 (Minn. App. 2020) (declining to consider certain evidence when the appellant cited "no authority for the proposition that an appellate court reviewing a summary-judgment decision should consider evidence not considered or even properly offered during the summary-judgment proceeding simply because it was mentioned in a different pleading").

Second, as to the verified complaint and the Tufaa declaration, we discern no abuse of discretion by the district court in declining to consider the cited generalized or conclusory assertions set forth in those documents. Although the district court did not make an express evidentiary ruling regarding any of the cited allegations, we understand its decision not to consider certain information cited by appellants as an evidentiary ruling authorized by the procedures set forth in Minn. R. Civ. P. 56.03. We review these determinations by the district court for an abuse of discretion. *State ex rel. Swanson v. Integrity Advance, LLC*, 846 N.W.2d 435, 440 (Minn. App. 2014) (applying an abuse-of-discretion standard of review to a district court's consideration of affidavits for purposes of summary judgment), *aff'd on other grounds*, 870 N.W.2d 90 (Minn. 2015).

"Evidence offered to support or defeat a motion for summary judgment must be such evidence as would be admissible at trial." *Hopkins by LaFontaine v. Empire Fire & Marine Ins. Co.*, 474 N.W.2d 209, 212 (Minn. App. 1991); *see generally* Minn. R. Civ. P. 56.03. Before the district court, respondents properly objected to appellants' reliance

8

on generalized averments in both the verified complaint and Tufaa's declaration, arguing that they were not properly supported by evidence that would be admissible at trial, following the procedure set forth in Minn. R. Civ. P. 56.03(b). The district court thereafter noted throughout its order that certain allegations from the verified complaint and Tufaa's declaration would not be admissible evidence at trial. In so doing, the district court parsed through the cited allegations in both documents and concluded that certain allegations purporting to state a "fact" were made "upon information and belief" only, with no supporting factual basis, or were otherwise conclusory. Stated differently, the district court determined that relevant allegations set forth in these documents were lacking in proper foundation and therefore would be inadmissible at trial. *See* Minn. R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). Because the district court determined that appellants failed to properly support the assertions of fact set forth in these documents and the record otherwise did not present a genuine issue for trial, the district court did not abuse its discretion in declining to consider these facts in its summary-judgment ruling pursuant to Minn. R. Civ. P. 56.05(c).

Appellants argue that the district court was obligated to consider the cited allegations set forth in these documents at summary judgment. But they do not challenge the basis of the district court's evidentiary determinations—that the allegations in these documents upon which appellants rely to present genuine issues for trial lack proper foundation. Instead, appellants broadly argue that a verified complaint is equivalent to an affidavit, which can appropriately be considered as evidence for purposes of summary

9

judgment, and that the district court made impermissible credibility assessments about the allegations.[1] *See DLH, Inc.*, 566 N.W.2d at 70 (stating that the district court "must not weigh the evidence on a motion for summary judgment").

Facts set forth in a verified complaint that meet the requirements of an affidavit are appropriately considered by the district court as evidence for purposes of summary judgment. In determining the admissibility of allegations in a verified complaint, a district court is guided by the requirements set forth in Minn. R. Civ. P. 56.03(d)—such allegations are admissible if they (1) are "made on personal knowledge," (2) "set out facts that would be admissible in evidence," and (3) "show that the affiant is competent to testify on matters stated."

The district court did in fact evaluate the allegations in the verified complaint upon which appellants relied to oppose summary judgment and determined that those allegations

---

[1] Although we address appellants' argument that a verified complaint is equivalent to an affidavit for purposes of summary judgment, we independently note that the verified complaint here lacks an essential hallmark of an affidavit. "An affidavit used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated." Minn. R. Civ. P. 56.03(d). An affidavit is "a document that has been signed, sworn, and notarized." *MacDonald*, 939 N.W.2d at 476 (quoting Minn. R. Gen. Prac. 15). Alternatively, an affidavit is "'a document that has been signed under penalty of perjury pursuant to Minnesota Statutes, section 358.116, provided that the signature is affixed immediately below a declaration' that says something like, 'I declare under penalty of perjury that everything I have stated in this document is true and correct.'" *Id.* (quoting Minn. R. Gen. Prac. 15). Therefore, in addition to the requirements set forth in Minn. R. Civ. P. 56.03(d), an affidavit must be "notarized [or] signed under penalty of perjury." *Id.* Here, the complaint was "verified," but it was neither notarized nor signed under penalty of perjury. We therefore cannot consider appellants' verified complaint as an affidavit for summary-judgment purposes.

were averred on "information and belief," not facts or personal knowledge, and therefore did not satisfy the admissibility threshold required by Minn. R. Civ. P. 56.03(d). That determination was not based on a credibility determination of the veracity of the averments but instead based on the absence of personal knowledge or factual basis to support the allegations. And such unsupported allegations are not admissible at trial. *See* Minn. R. Evid. 602. Accordingly, we hold that a party may rely on allegations in a verified complaint to support or oppose a motion for summary judgment if (1) the allegations are made on personal knowledge, (2) the allegations are based on facts that would be admissible in evidence, and (3) the face of the complaint shows the competence of the verifying party to testify on the matters stated, consistent with Minn. R. Civ. P. 56.03(d). Stated differently, for purposes of a motion for summary judgment, a verified complaint is the functional equivalent of an affidavit, and the allegations of a verified complaint must therefore satisfy Minn. R. Civ. P. 56.03(d) to be considered in support of or in opposition to the motion. We discern no abuse of discretion by the district court in evaluating the proffered evidence and determining that cited allegations in the verified complaint lacked proper foundation.

The district court likewise evaluated the cited allegations from Tufaa's declaration, noted that those cited allegations set forth in the declaration were based on "information and belief" and not facts, observed that those averments were not based on personal knowledge, and concluded that the allegations were not admissible evidence. This ruling, too, is consistent with the requirements of Minn. R. Civ. P. 56.03(d), and we see no abuse of discretion by the district court in its evidentiary determination. Minn. R. Evid. 602, 701.

11

Accordingly, we discern no abuse of discretion by the district court in its determination to only consider evidence admissible at trial for purposes of summary judgment. In evaluating the assignment of error for each of appellants' claims on appeal, we also consider only evidence admissible at trial to assess whether the district court erred in granting summary judgment of dismissal.

## II.     The district court properly dismissed the action at summary judgment.

Appellants argue that the district court erred by dismissing the following claims at summary judgment: STT's claim against CSTMN for breach of illusory contract; STT's claim against CSTMN for breach of the implied covenant of good faith and fair dealing; MTN's claim against respondents for tortious interference with contracts; MTN's claim against respondents for tortious interference with a prospective business advantage; MTN's claim against respondents for unjust enrichment; STT and MTN's claim against respondents for engaging in a contract, combination, or conspiracy to restrain trade in violation of Minn. Stat. § 325D.51; and STT and MTN's claims against respondents for engaging in a prohibited contract, combination, or conspiracy to restrain trade in violation of Minn. Stat. § 325D.53, subd. 1(2).[2] We address the summary-judgment dismissal of each claim in turn.

---

[2] While identified as appellants, we note that Wake and Tufaa do not challenge the dismissal of claims arising in their personal capacities.

**A.** **The district court properly dismissed STT's claims for breach of illusory contract and breach of the implied covenant of good faith and fair dealing.**

STT argues that the district court erred by granting summary judgment to respondents on its breach-of-illusory-contract and breach-of-the-implied-covenant-of-good-faith-and-fair-dealing claims. With respect to its claim for breach of illusory contract, STT alleged that CSTMN "breached its obligations under the [2020 STT-CSTMN service agreement] by failing to establish contractual requisites including, but not limited to, consideration in exchange for [STT's] services and obligations" and "by failing to provide customers, routes, and opportunities for transportation services with Minnesota school districts." With respect to its claim for breach of the implied covenant of good faith and fair dealing, STT alleged that CSTMN breached the implied covenant by failing to secure routes for STT.[3]

First, Minnesota does not recognize a claim for breach of contract when the alleged breach is a failure to form the contract due to lack of consideration, or what MTN labels as

---

[3] The verified complaint also included allegations that CSTMN attempted to remove routes and restrain STT from meeting its obligations under direct contracts with school districts and that CSTMN failed to refrain from making misrepresentations to CSTMN customers with whom STT has direct contracts. On appeal, appellants did not assert that the district court erred by determining that there was no genuine issue of material fact as to STT's allegation that CSTMN made misrepresentations. And STT did not argue to the district court that CSTMN breached the implied covenant by failing to exercise its discretion under the contract in good faith. Accordingly, we do not address whether summary-judgment dismissal of this claim based on those specific allegations was proper. *See Waters v. Fiebelkorn*, 13 N.W.2d 461, 464-65 (Minn. 1944) ("[O]n appeal error is never presumed. It must be made to appear affirmatively before there can be reversal. . . . [And] the burden of showing error rests upon the one who relies upon it."); *Thiele*, 425 N.W.2d at 582 (stating that a party cannot raise a new issue on appeal, "[n]or may a party obtain review by raising the same general issue litigated below but under a different theory").

13

"breach of an illusory contract."  "The elements of a breach of contract claim are (1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant." *Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014) (quotation omitted).  But "[w]hen there is a lack of consideration, no valid contract is ever formed." *Franklin v. Carpenter*, 244 N.W.2d 492, 495 (Minn. 1976); *see also* 3 Richard A. Lord, *Williston on Contracts* § 7:11 (4th ed. 2023) ("[A] lack of consideration results in no contract being formed.").  Although these authorities support the proposition that the absence of consideration may negate the *formation* of a contract, we are unaware of any Minnesota authority standing for the proposition that the absence of consideration is independently actionable as a *breach* of contract.  That is because the absence of consideration is fatal to the formation of a contract, without which no breach can exist.  The district court reached the same conclusion.  Accordingly, we hold that Minnesota does not recognize a cause of action for breach of an illusory contract.

Second, Minnesota does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing based on terms not included in the contract.  "A breach of contract is a failure, without legal excuse, to perform any promise that forms the whole or part of the contract." *Lyon Fin. Servs., Inc.*, 848 N.W.2d at 543 (citing 23 Richard A. Lord, *Williston on Contracts* § 63:1 (4th ed. 2002)).  Likewise, the implied covenant of good faith and fair dealing—which requires in every contract that "one party not unjustifiably hinder the other party's performance of the contract"—"does not extend to actions beyond the scope of the underlying contract." *In re Hennepin Cnty. 1986 Recycling*

14

*Bond Litig.*, 540 N.W.2d 494, 502-03 (Minn. 1995) (quotation omitted); *see also Minnwest Bank Cent. v. Flagship Props., LLC*, 689 N.W.2d 295, 303 (Minn. App. 2004) (concluding that a claim for breach of the implied covenant of good faith and fair dealing was properly dismissed when the claim was based on the performance of a duty not in the contract). STT argues that CSTMN breached the implied covenant of good faith and fair dealing in the 2020 STT-CSTMN service agreement because CSTMN did not provide customers, routes, and opportunities for transportation services to STT. But the plain language of the contract does not obligate CSTMN to provide such benefits to STT. STT's claim for breach of the implied covenant of good faith and fair dealing therefore fails.

B. **The district court properly dismissed MTN's claims of tortious interference with contract and tortious interference with prospective business advantage.**

MTN argues that the district court erred by dismissing its tortious-interference-with-contract and tortious-interference-with-prospective-business-advantage claims. MTN argues that the record contains evidence that respondents intentionally procured breaches of its direct-services contracts with Stillwater and St. Anthony by "causing the removal/termination of routes and services" and interfered with its ability to secure future business with those school districts. The district court dismissed these claims, determining that the record did not contain evidence that respondents intentionally procured a breach of contract or knew of MTN's reasonable expectation of economic advantage. We agree.

*Tortious Interference with Contract*

A claim of tortious interference with contract requires proof of "(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional

15

procurement of its breach; (4) without justification; and (5) damages." *Sysdyne Corp. v. Rousslang*, 860 N.W.2d 347, 351 (Minn. 2015) (quotation omitted). Our review of the entire record reveals an absence of admissible evidence on at least one essential element of MTN's claim.

With respect to its direct-services contract with Stillwater, MTN seems to argue that respondents intentionally procured Stillwater's breach of the contract. But MTN has not identified how Stillwater breached its contract with MTN, and the record contains no evidence that CESO or CSTMN interfered to intentionally procure any breach of the contract. It is also unclear which party MTN alleges breached its direct-services contract with St. Anthony, or what that breach was, or what the respondents did to intentionally procure that breach. The record contains evidence that St. Anthony notified MTN that it was going to remove routes from MTN permanently and assess fines based on its assertion that MTN continuously violated the contract by failing to provide the required number of personnel to fulfill St. Anthony's needs, failing to adequately communicate with parents and the district, and failing to have drivers exercise proper care to avoid injury and exposure to liability. But the record evidence does not establish that respondents acted intentionally to procure the breaches St. Anthony asserted, or, to the extent that St. Anthony's removal of routes and assessment of fines would be a breach of contract, procured that breach.

We acknowledge that MTN makes additional arguments with respect to its tortious-interference claims, but we do not address them here because respondents are entitled to summary judgment if "the record reflects a complete lack of proof" on even one of the essential elements of MTN's claim. *Lubbers*, 539 N.W.2d at 401.

16

*Tortious Interference with Prospective Business Advantage*

A claim of tortious interference with a prospective business advantage requires proof of (1) "[t]he existence of a reasonable expectation of economic advantage," (2) the defendant's "knowledge of that expectation of economic advantage," (3) the defendant's intentional interference "with plaintiff's reasonable expectation of economic advantage, and [that] the intentional interference is either independently tortious or in violation of a state or federal statute or regulation," (4) a reasonable probability "that plaintiff would have realized his economic advantage or benefit" in the "absence of the wrongful act of defendant," and (5) damages. *Gieske ex rel. Diversified Water Div., Inc. v. IDCA, Inc.*, 844 N.W.2d 210, 219 (Minn. 2014). "To ensure that fair competition is not chilled, a claim for tortious interference with prospective economic advantage must be limited to those circumstances in which the interference is intentional and independently tortious or unlawful, rather than merely unfair." *Id.* at 218. Our review of the entire record reveals an absence of admissible evidence on at least one essential element of MTN's claim.

The record does not contain admissible evidence showing that respondents were aware of MTN's claimed reasonable expectation of economic advantage in Stillwater and St. Anthony, or of MTN's efforts to obtain business from school districts other than Stillwater and St. Anthony. And there is no admissible evidence in the record showing that, in the absence of any alleged interference by any respondent, it was reasonably probable that MTN would have realized a claimed benefit.

MTN's claim with respect to other school districts fails as a matter of law because it is not tied to a specific third party. *Id.* at 221-22 ("[A] plaintiff must specifically identify

17

a third party with whom the plaintiff had a reasonable probability of a future economic relationship. . . . [A] plaintiff's projection of future business with unidentified customers, without more, is insufficient as a matter of law.").

With respect to MTN's claims regarding Stillwater and St. Anthony, we note that the terms of MTN's direct-services contracts were several years long and continued past the point at which MTN commenced this action. But on appeal, MTN has not pointed to evidence showing that it was reasonable for it to expect that those contracts would continue, without modification, through the end of the term despite contract violations or that its relationships with those districts would continue past the contract term. And, even if those expectations were reasonable, the record does not contain evidence establishing that respondents had knowledge of MTN's expectation. The record shows that CESO provided "full service" to Stillwater and St. Anthony, and that in that role it was aware of MTN's contracts with the districts and communicated with MTN on the districts' behalf. And the record contains evidence that owners of CESO and CSTMN are related, that the entities share space at the same address, and that CESO provides transportation staffing to CSTMN. But this evidence does not establish that respondents were specifically aware of MTN's reasonable expectation of an economic advantage with Stillwater or St. Anthony.

Because the record does not contain evidence to support these essential elements of MTN's claim, we conclude that summary judgment was appropriate and do not address MTN's arguments with respect to other elements of its claim. *Lubbers*, 539 N.W.2d at 401.

**C.      The district court properly dismissed STT and MTN's antitrust claims.**

STT and MTN assert that the district court erred by dismissing their antitrust claims arising out of alleged violations of Minn. Stat. §§ 325D.51, .53, subd. 1(2)(b)-(c). STT and MTN generally allege that respondents "planned and acted in concert" and "engaged in making prohibited contracts in violation of statutory mandates and engaged in combination or conspiracy between themselves" to restrain trade or that resulted in refrains from bidding or restrained competition on public contracts. Because the record does not contain admissible evidence that respondents engaged in the alleged anticompetitive behavior, we disagree.

"A contract, combination, or conspiracy between two or more persons in unreasonable restraint of trade or commerce is unlawful." Minn. Stat. § 325D.51. Additionally, "[a] contract, combination, or conspiracy between two or more persons whereby, in the letting of any public contract . . . (b) one or more persons refrains from the submission of a bid, or (c) competition is in any other manner restrained" is deemed an unreasonable and unlawful restraint of trade or commerce. Minn. Stat. § 325D.53, subd. 1(2)(b)-(c). A "[c]ontract, combination, or conspiracy means any agreement, arrangement, collusion, or understanding." Minn. Stat. § 325D.50, subd. 4 (2022) (quotation omitted).

The record does not contain admissible evidence of a contract or combination between CSTMN and CESO to restrain trade. *See id.* (defining specifically a contract as including "a purchase, contract to purchase, a sale, a contract to sell, a lease, a contract to lease, a license, or a contract to license" and defining a combination as including "a trust,

19

common selling or purchasing agent, pool, or holding company"). To establish a conspiracy "[n]o formal agreement is necessary." *Prestressed Concrete, Inc. v. Bladholm Bros. Culvert Co.*, 498 N.W.2d 274, 277 (Minn. App. 1993) (quoting *Am. Tobacco Co. v. United States*, 328 U.S. 781, 809-10 (1946)), *rev. denied* (Minn. May 28, 1993); *see also Lorix v. Crompton Corp.*, 736 N.W.2d 619, 626 (Minn. 2007) ("Minnesota antitrust law is generally interpreted consistently with federal antitrust law."). Rather, it "may be found in a course of dealings or other circumstance as well as in an exchange of words." *Prestressed Concrete, Inc.*, 498 N.W.2d at 277 (quoting *Am. Tobacco Co.*, 328 U.S. at 809-10). But the record evidence does not show that CESO and CSTMN had "an agreement, arrangement, collusion, or understanding" between them to restrain trade, or that resulted in a person refraining from submitting a bid to a public contract or restrained competition on a public contract. Minn. Stat. §§ 325D.51, .53 subd. 1(2)(b)-(c). While the record evidence, taken in the light most favorable to STT and MTN as nonmoving parties, may show connections between the entities, the record does not show that the connected entities were working together to restrain trade or that any of the alleged anticompetitive conduct of respondents actually restrained trade.

In addition, the undisputed evidence establishes that STT and MTN were not discouraged from soliciting business or bidding on public contracts because of any alleged anticompetitive behavior by respondents. Although STT complains that the nonsolicitation provision in its agreement with CSTMN was an unreasonable restraint of trade, STT nevertheless entered into direct contracts with schools. And although Wake, the owner of STT, testified that STT did not pursue contracts in "most of the districts" and cited to the

20

nonsolicitation provision, he also testified that the reasons he did not pursue those contracts had nothing to do with the nonsolicitation provision or that he was otherwise unaware or was unable to recall if STT participated in or the school districts held a public quotation process.[4]  The 2019 MTN-CSTMN service agreement did not contain a nonsolicitation provision.

Because the record lacks evidence that respondents, working together, restrained trade, bids, or competition, summary-judgment dismissal of STT and MTN's antitrust claims was proper.[5]

### D. The district court properly dismissed MTN's claim for unjust enrichment.

MTN asserts that the district court erred by dismissing its unjust-enrichment claim. Because the record contains no evidence that respondents knowingly received something of value to which they were not entitled, we disagree.

---

[4] At oral argument, appellants' counsel asked that, in reviewing this testimony, we consider that English is not Wake's first language.  We appreciate that Wake may have experienced language barriers at his deposition, but we also note that the record does not contain a completed errata sheet from his deposition or other supplemental filing correcting or clarifying Wake's answers to questions posed at his deposition.  Minn. R. Civ. P. 30.05 ("If requested by the deponent or a party before completion of the deposition, the deponent shall have 30 days after being notified by the officer that the transcript or recording is available in which to review the transcript or recording and, if there are changes in form or substance, to sign a statement reciting such changes and the reasons given by the deponent for making them.").  Nonetheless, it is not readily apparent from our review of the deposition transcript which, if any, of Wake's answers may have been impacted by a language barrier.

[5] The parties debate whether any public quotation process the school districts held include the making of a "bid" under Minn. Stat. § 325D.53, subd. 1(2)(b).  We do not address this question because, even assuming that a quotation process is within the scope of the statute, STT and MTN's claim was still properly dismissed at summary judgment.

To succeed on a claim of unjust enrichment, the evidence must show that respondents "knowingly received something of value to which [they were] not entitled, and that the circumstances are such that it would be unjust for that [entity] to retain the benefit." *Schumacher v. Schumacher*, 627 N.W.2d 725, 728 (Minn. App. 2001). "An action for unjust enrichment does not lie simply because one party benefits from the efforts of others; instead, it must be shown that a party was unjustly enriched in the sense that the term unjustly could mean illegally or unlawfully." *Id.* at 729 (quotation omitted). This can include circumstances in which retaining the benefit is morally wrong. *Id.* at 729-30 (reversing the summary-judgment dismissal of the appellant's unjust-enrichment claim when he "provided evidence that he made substantial improvements on respondents' land, that respondents knew of those improvements and either encouraged them or did nothing to discourage them and that respondents have benefited from them," creating a genuine issue of material fact).

MTN alleged that respondents "siphon[ed] off amounts designated by the Stillwater and [St. Anthony] school districts for MTN, redirect[ed] routes secured by contract as well as anticipated through marketing and business efforts, and refus[ed] to pay MTN for the value of business improperly redirected." But the record does not contain evidence that respondents received any benefit to which MTN was entitled. And although MTN asserts that CSTMN received route assignments from CESO on behalf of the school districts that were once serviced by MTN, those assertions are not based on admissible evidence. Because the record evidence does not contain facts showing that respondents received

22

anything of value to which they were not entitled, the district court properly dismissed MTN's unjust-enrichment claim.

## DECISION

The district court properly considered only evidence that would be admissible at trial in determining whether a genuine issue of material fact existed. We hold that a party may use allegations in a verified complaint to support or oppose a motion for summary judgment if (1) the allegations are made on personal knowledge, (2) the allegations are based on facts that would be admissible in evidence, and (3) the face of the complaint shows the competence of the verifying party to testify on the matters stated, consistent with Minn. R. Civ. P. 56.03(d). The district court did not abuse its discretion in declining to consider allegations in documents that lacked proper foundation in reaching its summary-judgment decision. We also hold that Minnesota does not recognize a cause of action for breach of an illusory contract. And the record is devoid of admissible evidence establishing the essential elements of the remaining claims. We therefore affirm the district court's summary-judgment dismissal of the action.

**Affirmed.**