*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A24-1758**

In re the Marriage of Zachary Dean Hollingsworth, petitioner,
Respondent,

vs.

Anne Marie Halling Roe,
Appellant.

**Filed November 17, 2025
Affirmed in part, reversed in part, and remanded
Connolly, Judge**

Anoka County District Court
File No. 02-FA-23-57

Zachary D. Hollingsworth, Blaine, Minnesota (pro se respondent)

Kay Nord Hunt, Michelle K. Kuhl, Lommen Abdo, P.A., Minneapolis, Minnesota; and

Elizabeth M. Porter, Elizabeth M. Porter, LLC, Apple Valley, Minnesota (for appellant)

Considered and decided by Harris, Presiding Judge; Connolly, Judge; and Schmidt, Judge.

**NONPRECEDENTIAL OPINION**

**CONNOLLY**, Judge

On appeal from the judgment and decree dissolving the parties' marriage, appellant-wife argues that the district court abused its discretion in (1) denying her request for spousal maintenance, (2) miscalculating respondent-husband's child-support obligation, and (3) denying her request to change her name. We affirm the denial of appellant's request

for maintenance and the calculation of respondent's child-support obligation, but we reverse and remand in part with instructions to change appellant's name.

## FACTS

Appellant Anne Marie Halling Roe (wife) and respondent Zachary Dean Hollingsworth (husband) were married in May 2012. The parties had two daughters during the marriage, one born in October 2013, and another born in July 2017. In 2023, husband filed a petition for dissolution of the marriage. The parties later reached a stipulated agreement resolving most of the disputed issues. The remaining issues for trial consisted of, among other things, spousal maintenance and child support.

The district court met with the parties' lawyers in chambers before trial. The district court then stated on the record that "I don't believe in long, spousal maintenance periods. I think that those, in the long run, create more issues than they are worth." The trial then began, at which evidence was presented that, during the marriage, husband changed careers to become a plumber. At the time of trial, husband was employed full time as a plumber, with a net monthly income of approximately $4,887. Husband also has a net monthly income of approximately $663 through his service with the National Guard.

Wife attended Aveda Institute and became an esthetician before the parties wed. After the parties' first child was born, wife reduced her hours "so that [the parties] always had someone to watch [their child]." Wife later opened her own salon and, at the time of trial, was working part time. According to wife, she had net profits of $19,389 in 2021, and $27,056 in 2022.

2

A vocational expert with 15 years of vocational rehabilitation experience provided a "Labor Market Survey regarding the earning potential of [wife]." In providing this survey, the vocational expert reviewed "current job postings in the Minneapolis – St. Paul area," and spoke with "three subject matter experts," each of whom had more than 15 years of experience and were "actively working in the Twin Cities." According to the vocational expert, two of the individuals she spoke with worked for salons and the third was self-employed. The vocational expert opined that, based on her market survey, an individual such as wife who is a self-employed esthetician and has 15 years of experience, could earn "approximately $100,000 to $150,000 annually" if she was working full time.

At the end of trial, wife submitted proposed findings that sought to change her legal name to "Anne Marie Halling Roe." The district court denied this request, concluding that the court "has no evidence that a change of name is necessary." The district court also found that wife "is voluntarily underemployed and . . . has unjustifiably limited her income." The district court then denied wife's request for spousal maintenance, determining that maintenance is not appropriate "[g]iven the parties' respective employment history, the standard of living they established, [wife's] ability to immediately increase her income, [wife's] ability to provide complete self-support in the near future, [and] the distribution of marital assets." Finally, the district court determined that, based on the parties' equal parenting-time schedule, husband's gross monthly income of $9,973,

and wife's "potential gross monthly income" of $8,333, husband's basic child-support obligation to wife is $97 per month. Wife appeals.[1]

## DECISION

## I.

Wife challenges the district court's denial of her request for spousal maintenance. District courts generally have broad discretion in decisions regarding spousal maintenance. *Erlandson v. Erlandson*, 318 N.W.2d 36, 38 (Minn. 1982). A district court abuses its discretion when it makes findings that are unsupported by the evidence or when it improperly applies the law or when it resolves the question in a manner that is contrary to logic and the facts on record. *Dobrin v. Dobrin*, 569 N.W.2d 199, 202 & n.3 (Minn. 1997). This court reviews legal questions de novo, but reviews findings of fact for clear error. *Kampf v. Kampf*, 732 N.W.2d 630, 633 (Minn. App. 2007), *rev. denied* (Minn. Aug. 21, 2007). Findings are clearly erroneous if "they are manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *Id.* (quotation omitted).

Wife argues that the district court abused its discretion in denying her request for transitional maintenance[2] because (A) husband has the ability to pay and wife does not

---

[1] Husband did not file a brief in this appeal, and this court ordered that the appeal proceed under Minn. R. Civ. App. P. 142.03.

[2] After recent amendments, Minnesota law now provides:

> A maintenance award may be transitional or indefinite. An award of temporary maintenance issued before August 1, 2024, is deemed transitional maintenance. An award of permanent maintenance issued before August 1, 2024, is deemed indefinite maintenance. Maintenance awarded during the pendency of an initial proceeding for dissolution or legal

4

presently have sufficient income to meet her reasonable monthly expenses; (B) the other

spousal-maintenance factors support an award of spousal maintenance; and (C) the district

court stated on the record that it does not believe in spousal maintenance.

### A. Wife's need versus husband's ability to pay

If a party requests spousal maintenance, the district court must address whether the

spouse seeking spousal maintenance established a need for maintenance under Minn. Stat.

§ 518.552, subd. 1 (2024). *Honke v. Honke*, 960 N.W.2d 261, 266 (Minn. 2021); *see Lyon*

*v. Lyon*, 439 N.W.2d 18, 22 (Minn. 1989) (stating that an award of spousal maintenance

requires a showing of need). "If a party requests spousal maintenance, a district court must

engage in a two-step analysis." *Madden v. Madden*, 923 N.W.2d 688, 695 (Minn. App.

2019). The first step is to consider "whether the party seeking maintenance has

demonstrated a showing of need." *Id.* (quotation omitted). A party demonstrates a showing

of need if "the party is unable to provide for his or her reasonable expenses through

employment income or investment income or a combination of both." *Id.* If a party makes

the threshold showing of need, the second step is for the district court to consider the

appropriate amount and duration of maintenance. *Id.* In making this determination, the

district court considers "all relevant factors." Minn. Stat. § 518.552, subd. 2 (2024).

The district court acknowledged that husband has an ability to pay spousal

maintenance, finding that he has "a surplus" of income after considering his income and

---

> separation pursuant to section 518.131 is deemed temporary
> maintenance.

Minn. Stat. § 518.552, subd. 3(a) (2024).

reasonable expenses. But in denying wife's request for spousal maintenance, the district court found that wife is "voluntarily underemployed and has unjustifiably limited her income" by working "the 19 hours per week she has been working." The district court found that wife "can and should work 40 hours per week," and that she is "capable of increasing her income substantially by increasing her services offered by an additional 20 hours per week," as well as "raising her prices to match the current prices within the trade and to meet current economic conditions." The district court then considered wife's "probable earnings level based on employment potential, recent work history, and occupational qualifications in light of the substantial job opportunities and earning levels in the community," and imputed "gross annual income to [wife] in the amount of $100,000 or gross monthly income potential of $8,333.00."

Wife argues that the district court improperly imputed income to her "because she was not underemployed in bad faith." To support her position, she relies on *Maurer v. Maurer*, 607 N.W.2d 176 (Minn. App. 2000), *rev'd on other grounds*, 623 N.W.2d 604 (Minn. 2001), and *Carrick v. Carrick*, 560 N.W.2d 407 (Minn. App. 1997). In each of those two cases, this court held that the district court had erred by imputing income to a longtime homemaker without a finding of bad-faith underemployment. *Maurer*, 607 N.W.2d at 181; *Carrick*, 560 N.W.2d at 410. This court reasoned that, when a spouse is the homemaker and primary caretaker of the children, imputing income to that spouse without a finding of bad faith would ignore the spouse's contributions as a homemaker in the marriage and punish her for maintaining the homemaker lifestyle. *Carrick*, 560 N.W.2d at 410; *see also Maurer*, 607 N.W.2d at 181.

6

Wife's reliance on *Carrick* and *Maurer* is misguided because she reads those cases to require the district court to find that she is underemployed in bad faith before attributing income to her for the period of time *after* judgment is entered. But in *Passolt v. Passolt*, this court rejected that reading of *Carrick* and *Maurer*, concluding that, "[b]ecause *Carrick* addressed only the period between the parties' separation and the dissolution judgment, the district court read *Carrick* too broadly to apply to the post-judgment period at issue in this case. Similarly, because *Maurer* simply applies *Carrick* in a factually similar situation, our analysis of *Carrick* also addresses *Maurer*." 804 N.W.2d 18, 24 (Minn. App. 2011) (citation omitted), *rev. denied* (Minn. Nov. 15, 2011). And more recently, this court held that a district court need not find bad faith in order to find that an obligee is able to become fully or partially self-supporting after dissolution. *Backman v. Backman*, 990 N.W.2d 478, 488 n.5 (Minn. App. 2023). Thus, under the circumstances, the district court did not improperly impute income to wife without a finding of bad faith. *See id.*

Wife also contends that, even if the district court "could impute income to [her], it was error to do so immediately" because the vocational expert "offered no opinion on how long it would take [w]ife" to begin earning $100,000 to $150,000 annually.[3] And wife claims that the vocational expert was "unclear about whether the estimated $100,000 to $150,000 was before or after business expenses."

We are not persuaded. Despite wife's claim to the contrary, the vocational expert testified that her $100,000-to-$150,000 estimate constitutes the "total earnings after you

---

[3] At oral argument, wife's counsel emphasized that it would take some time for wife to build a book of business.

7

take out the cost of supplies and renting a space and all of that." Moreover, the vocational expert's opinion was based, in part, by reviewing "current job postings in the Minneapolis – St. Paul area." The vocational expert testified that, after COVID, there are "*a lot* of job opportunities" for qualified workers in wife's field. (Emphasis added.) The vocational expert also testified that some of the job opportunities she reviewed were part-time, which could supplement wife's current self-employment earnings. The fact that the vocational expert's opinion was based heavily upon the "current job postings" indicates that she believed wife could immediately earn $100,000 to $150,000 annually. The district court found the vocational expert's opinion to be credible, and we defer to that determination. *See Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988). And, notably, the district court's imputation of income to wife was the lowest amount on the range estimated by the vocational expert. Therefore, wife is unable to show that the district court clearly erred in finding that wife could immediately begin earning $100,000 annually.

Next, wife argues that, in denying her request for spousal maintenance, the district court "impermissibly relied on assets awarded to [her] in the dissolution as available to meet her immediate needs." To support her position, wife refers to the following finding made by the district court in discussing wife's financial resources: "[Wife] will also receive her share of equity in the marital home when the home is sold." Wife contends that, based on this finding, it "appears the [district] court anticipated [w]ife would use the funds from the sale of the marital home to meet her monthly expenses at least temporarily until she can increase her income," which was "error." We disagree.

8

Our supreme court has recognized that "a district court cannot require a maintenance-seeking spouse to invade the principal of the property awarded to a spouse seeking maintenance to pay living expenses." *Curtis v. Curtis*, 887 N.W.2d 249, 254 (Minn. 2016) (quotation omitted). But wife's argument misconstrues the district court's findings. The district court found that wife can "immediately increase her income" which will allow her to "comfortably meet her needs" in the "near future." This finding indicates that her increased income will allow her to meet her needs without invading her property award. And immediately after finding that wife will "receive her share of the equity in the marital home when the home is sold," the district court found that the parties' agreed-upon asset distribution is "fair and equitable," which "will allow each party to provide a down payment on a new home or meet other financial needs." This finding indicates that the district court's reference to the proceeds from the sale of the parties' marital home would be used to meet needs other than wife's living expenses. We therefore conclude that the district court did not impermissibly rely on assets awarded to wife in the dissolution as available to meet her immediate needs.

Wife further challenges several of the district court's reductions to her monthly budget. But the district court has discretion to determine the marital standard of living and to determine reasonable post-dissolution expenses according to that standard of living. *Schmidt v. Schmidt*, 964 N.W.2d 221, 230 (Minn. App. 2021). Here, the district court eliminated from wife's claimed monthly living expenses $52 for life insurance and $300 for a 401K retirement fund, finding that there was "no evidence" that these expenses were part of the parties' standard of living during the marriage. Although wife claims that she

9

presented evidence of such expenses during the marriage, the district court apparently determined that this evidence was insufficient to show that the parties *consistently* incurred these expenses *throughout* the marriage. In light of the discretion afforded the district court, wife is unable to show that these findings are clearly erroneous. *See id.*

Wife contends that the district court erroneously eliminated from wife's claimed monthly budget $52 for appliance repair/maintenance and $93 for household cleaning/laundry supplies. We disagree. The district court found that these expenses were "duplicative" of wife's claimed monthly expense of $104 for home repair/maintenance, which the district court allowed. Appliance repair/maintenance could certainly be construed as duplicative of home repair/maintenance. And although cleaning and laundry supplies could be construed as different from home repairs, it was reasonable for the district court to consider it duplicative of home repair/maintenance since cleaning and laundry are relatively synonymous with maintaining the family home. *See id.*

Wife argues that the district court erroneously eliminated vacations from her budget because both she and husband "testified that they agreed they had taken three to four vacations per year during their marriage." But the weight to be given witness testimony is a function of the fact-finder. *See State v. King*, 990 N.W.2d 406, 420 (Minn. 2023) ("[Appellate courts] accord great deference to the [district] court's determination on credibility because credibility and the weight to be given to a witness's testimony are determinations for the factfinder." (quotations omitted)). The district court found the parties' testimony related to the number and frequency of vacations the family took during the marriage to be less than credible, and this court defers to that credibility determination.

10

*See id.* As such, it was within the district court's discretion to eliminate vacations from wife's monthly budget. *See Schmidt*, 964 N.W.2d at 230. We therefore conclude that the district court did not abuse its discretion in determining that wife presently has sufficient income to meet her reasonable monthly expenses.

B.    *Spousal-maintenance factors contained in Minn. Stat. § 518.552, subd. 2*

Wife argues that the spousal-maintenance factors contained in section 518.552, subdivision 2, support an award of maintenance. But these factors need be considered only if wife made a showing of her need for maintenance. *See Curtis*, 887 N.W.2d at 252 (stating that "[o]nce a spouse has made a sufficient showing of need, *only then* will a court consider the amount and duration of a maintenance award by weighing the factors enumerated in Minn. Stat. § 518.552, subd. 2" (emphasis added)). Because the district court did not abuse its discretion in determining that wife failed to establish a need for maintenance, we need not consider wife's argument related to the factors set forth in section 518.552, subdivision 2.

C.    *District court's statement that it does not believe in long spousal-maintenance periods*

Wife argues that the district court's "candid admission that it did not 'believe in' the [spousal-maintenance] statute casts serious doubt on whether it evaluated the spousal-maintenance issue fairly." But the record reflects that, along with stating that it does not "believe in long, spousal maintenance periods," the district court acknowledged that, "until I hear testimony, I can't make a commitment." The district court also noted that, "as it comes to spousal maintenance, I am going to have to hear from the vocational person" and

11

"from [wife's] witnesses to determine what amount of income, if any, [to] impute to [wife] and for what length." And the district court added that spousal maintenance "could be as short as six months. It could be for up to three years." The district court's statements on the record indicate that it would fairly consider the spousal-maintenance issue after hearing all the evidence and testimony. As such, appellant cannot show that the district court abused its discretion in denying wife's request for spousal maintenance.

## II.

Wife argues that, because the district court "erred in finding that [w]ife's gross income could immediately be increased to $100,000," the court's calculation of husband's child-support obligation is erroneous. But, as we determined above, the district court did not abuse its discretion in determining that wife's net income could be increased to $100,000. Therefore, wife's contention that the district court abused its discretion in calculating husband's child-support obligation fails.

## III.

Wife challenges the district court's denial of her request to change her name. We review a district court's decision to grant or deny a name change for abuse of discretion. *In re Welfare of C.M.G.*, 516 N.W.2d 555, 561 (Minn. App. 1994). But the interpretation of a statute is a question of law that is reviewed de novo. *Goldman v. Greenwood*, 748 N.W.2d 279, 282 (Minn. 2008).

Minnesota law provides that:

> Except as provided in section 259.13, in the final decree of dissolution or legal separation the court shall, if requested by a party, change the name of that party to another name as

12

the party requests. The court shall grant a request unless it finds that there is an intent to defraud or mislead, unless the name change is subject to section 259.13, in which case the requirements of that section apply.

Minn. Stat. § 518.27 (2024). Minnesota Statutes section 259.13 (2024) relates to name changes concerning persons with felony convictions.

In denying wife's request to change her name, the district court found that it did not have the relevant information necessary to grant the request. Wife argues that this decision is erroneous because, under section 518.27, the district court was obligated to change her name in the dissolution judgment. We agree.

This court has recognized that "a verified complaint is the functional equivalent of an affidavit." *Metro. Transp. Network, Inc. v. Collaborative Student Transp. of Minn., LLC*, 6 N.W.3d 771, 781 (Minn. App. 2024), *rev. denied* (Minn. July 23, 2024). Here, wife asserted in her answer and counter-petition that she

> has not been convicted of a felony; [she] has not been a party to a bankruptcy proceeding; [she] has no judgments against her; [she] is not involved in any lawsuits, as either Plaintiff or Defendant; [she] is not attempting to avoid or defraud creditors; and [she] is not attempting to evade any civil or criminal prosecution.

The answer and counter-petition were accompanied by a signed verification stating that she

> being first duly sworn upon oath, deposes and says that she is [wife] named in the foregoing, within-entitled proceeding; that she has read the attached Answer and Counter-Petition and that the same is true of her own knowledge, except those statements based on information and belief, which statements she believes to be true.

13

Because wife's answer and counter-petition is akin to an affidavit, the district court was presented with information that wife was never convicted of a felony, was not a party to a bankruptcy proceeding, had no judgments against her, was not involved in any lawsuits, was not attempting to avoid or defraud creditors, and was not attempting to evade any civil or criminal prosecutions. And, as wife points out, none of these allegations were contested. As such, the district court's finding that it did not have the relevant information related to wife's name-change request is clearly erroneous.

Moreover, section 518.27 states that the district court "shall" grant a request for a name change unless the requesting party is subject to the requirements of section 259.13, or the court finds "an intent to defraud or mislead." Minn. Stat. § 518.27; *see* Minn. Stat. § 645.44, subd. 16 (2024) (stating that "'[s]hall' is mandatory"). The district court never found an intent to defraud, and wife attested that she has never been convicted of a felony. Nor was there any evidence submitted demonstrating that wife has been convicted of a felony. Accordingly, the district court was required to grant wife's request to change her name under section 518.27. Because the district court was required to grant wife's request to change her name under section 518.27, we reverse in part and remand with instructions to change wife's name.

**Affirmed in part, reversed in part, and remanded.**